STATE EX REL. BARTH, Petitioner, v. BURKE, Warden, Respondent.

*March 25—June 2, 1964.*

A brief was filed by *Harry P. Hoeffel* of Appleton for the petitioner.

A brief was filed by *George Thompson,* attorney general, and *William A. Platz,* assistant attorney general, for the respondent.

DIETERICH, J. On April 24, 1962, Clifford W. Barth was convicted on 19 counts of issuing worthless checks in violation of sec. 943.24, Stats., in the county court of Outagamie county, GUSTAVE J. KELLER, Judge.

Barth was first brought before the county court on December 1, 1961, and was bound over for trial after waiving preliminary examination. The district attorney requested, and obtained, a ten-day period to investigate the matter further. On December 12, 1961, Barth again appeared before the court, and the information was read to him. The following then occurred:

"*Q.* Do you understand the information, Mr. Barth? *A.* I think I do. (At which time the defendant was advised of his legal rights.)

"*Q.* Do you desire to retain an attorney to represent you? *A.* I called an attorney. He didn't show up. I think the first or 20th of December.

"*Q.* You were in court the 1st of December, 1961. Did you try calling again? *A.* No.

"*Q.* What is the reason he didn't show up? *A.* The reason I didn't call another—figured he wouldn't come up. I called his office.

"*Q.* Who is that? *A.* Franklin Nehs.

"*Q.* How about this matter of consolidation? You want to retain an attorney? *A.* Yes. (At which time the defendant was sworn in by the Court to determine whether or not he was a pauper.)

"*Q.* Do you own any real estate? *A.* I have part of a lot partly paid for out here—Town of Menasha.

"*Q.* What is it worth? *A.* Maybe $1,500.

"*Q.* How much indebtedness against it? *A.* About $500.

"*Q.* The Court holds you are not a pauper."

The matter was continued until December 18, 1961, at which time the following took place:

"By the Court: Let the record indicate that the defendant is present in person. The state is represented by the district attorney. Now, you have been here, Mr. Barth, several times, and I believe on the last occasion on the complaint that we had, before your plea to the information you wanted to retain an attorney. *A.* I did Your Honor.

"*Q.* The Court put you under oath and the Court is of the opinion you are not a pauper. We have received some new complaints. Now—(At which time the four counts of the complaint were read to the defendant.) (The defendant stated he understood each of the counts of the complaint.)

"*Q.* You are informed you are entitled to a preliminary examination. You can waive it if you want to. *A.* I waive it.

"*Q.* Let the record indicate the defendant waived the preliminary examination and is bound over for the reading of the information. (At which time the information was read by the district attorney.) . . . You understand the various counts? *A.* I do, Your Honor.

"*Q.* If you so desire you can retain an attorney. Do you wish to have an attorney? *A.* No. I wish you would take them all in account."

Barth entered a plea of guilty to the charges and on January 19, 1962, was sentenced on one count to the county jail for a period of one year, with Huber Law privileges. On each of the other 18 counts sentence was withheld, and he was placed on probation for four years.

On April 24, 1962, Barth again appeared before the court after having violated the provisions of his probation and also the provisions of the Huber Law. He was asked whether he was dissatisfied with the terms of his probation, and he replied:

"*A*. I will put it this way. I knew I couldn't keep the probation under the rules and regulations that you set down. I think it is best I just get off of it. Serve my time out and get done with it."

The trial court stated that Barth's request would be complied with, and his probation was revoked. He was sentenced to a total of five years in the state prison (five one-year terms to run consecutively). The total number of counts involved in the April 24, 1962, sentence was 19, whereas at the original trial sentence was withheld on only 18 counts, Barth having been sentenced on January 19, 1962, to one year in the county jail under the Huber Law on one count. Thus the sentences imposed on April 24, 1962, appear to include one count for which Barth had previously been sentenced to the county jail.

The petitioner's major contention is that he was not represented by counsel, although faced with the possibility of a substantial prison sentence. He also raises additional arguments to the effect that: (1) The sentence is void because it included one more count than he was charged with; (2) the sentence is void because it included one count for which he had previously been sentenced to one year in the county jail; and (3) that he was not advised of his right to appeal, and was denied a transcript of the proceedings.

Although the petitioner was charged with a misdemeanor, he faced a substantial sentence on the 19 counts with which he was charged. The trial court asked Barth several times whether he wished to retain an attorney, but the record does not reveal that he was informed that if indigent he would be

entitled to have counsel appointed for him. He was also questioned as to his assets, and it was revealed that he had "part of a lot partly paid for" which was worth about $1,500, and which was subject to a debt of about $500. Without more, the trial court found that he was not a pauper. The amended petition states that Barth had been doing work off and on for the owner of the lot in question, and that the agreement was that when he had done $900 worth of work, the owner would transfer title to him. There is nothing in the record which indicates that Barth was ever advised or that he ever knew that the offenses to which he pleaded guilty could subject him to a sentence of five years in the state prison. The trial court's inquiry into his indigency was at best cursory, for upon eliciting the information that he had some undefined interest in property worth about $1,500, and subject to about $500 in encumbrances, the court found him to be not a pauper. Upon the record in the instant action the trial court's finding that Barth was not indigent was arbitrary and was made upon an inadequate determination of the facts. See *State ex rel. Burnett v. Burke* (1964), 22 Wis. (2d) 486, 126 N. W. (2d) 91.

Under all the circumstances we are obliged to determine that the trial court erred in finding Barth to be nonindigent, and that he did not freely and intelligently waive his constitutional right to be represented by counsel. The conviction is therefore set aside. Because we so decide, it becomes unnecessary to consider the petitioner's other contentions.

*By the Court.*—It is considered that the issuance of the writ of *habeas corpus* be omitted, and we hereby vacate and set aside the judgment and sentence of the county court of Outagamie county, and order a new trial. The warden of the state prison is directed to deliver the petitioner to the sheriff of Outagamie county to be held by him for further proceedings according to law.

Hallows, J. (*dissenting*).  I must respectfully dissent from the conclusion that the trial court erred in finding Clifford W. Barth to be nonindigent and that he did not freely and intelligently waive his constitutional right to counsel.

The record shows Barth was knowledgeable, that he understood the information, attempted to get counsel to represent him, and then decided he did not want counsel. This is not a case of an ignorant accused being taken advantage of. Barth was a convict of some accomplishments in the field of crime who accepted probation knowing he was too weak to keep the conditions and who, upon breach thereof, requested to be sentenced so he could get it over with.

I consider the trial court's inquiry into Barth's indigency sufficient.  Barth had some duty to come forward in his own behalf if he disagreed with the finding of the court.  The recognition and the guaranty to the accused of his constitutional rights do not require an elaborate ritual by the trial court in each case, or that the record must show in detail an aggressive attitude by the trial court.  On appeal we look for a denial of the accused's rights.  In doing so in this case the majority misplaces the burden of proof.  While perhaps more could be desired in the way of examination by a trial court, we cannot find in the record that Barth was denied his constitutional rights.

I am authorized to state Mr. Chief Justice Currie joins in this dissenting opinion.