City of Toledo, Appellee, *v.* Frazier, Appellant.

[Cite as Toledo v. Frazier, 10 Ohio App. 2d 51.]

(No. 6233—Decided April 19, 1967.)

*Mr. Louis R. Young,* director of law, and *Mr. Gerald A. Jiblian,* for appellee.

*Mr. Harland M. Britz, Mr. Niki Schwartz,* and *Mr. Gerald B. Lackey,* for appellant.

Smith, P. J. This is an appeal on questions of law from a judgment and sentence of the Municipal Court of Toledo, affirmed on appeal to the Common Pleas Court of Lucas County by a panel of three judges concurring, convicting the defendant, appellant herein, on a charge of unlawfully operating a motor vehicle on the streets of the city of Toledo without a proper driver's license, in violation of the Toledo Municipal

Code, Section 29-9-1, Article IX, which provides:

"(a) No person shall operate a motor vehicle upon the streets or highways of the city of Toledo unless such person shall have either a driver's license, a chauffeur's license or a temporary instruction permit, all as required by the statutes of the state of Ohio; * * *

"(c) Every person convicted of a misdemeanor for the violation of any of the provisions of this section shall be punished by a fine of not more than five hundred dollars or by imprisonment of not more than six months or by both such fine and imprisonment."

The ordinances of the city of Toledo have been so codified paralleling statutes of the state of Ohio on the same subject matter.

The sole assignment of error stated to this court is that the Court of Common Pleas erred in affirming the judgment of the Toledo Municipal Court. Counsel for the defendant asserts that the question raised by the appeal is whether the defendant has a right to counsel and whether the court has a duty to advise him of this right.

The record of the proceedings in the trial court is before this court on a very brief narrative form of bill of exceptions and reveals the operative facts that the defendant was brought before the Municipal Court and was advised that he was charged with operating a motor vehicle without a valid operator's license in violation of the Municipal Code of the city of Toledo; and that he was asked for his plea and, thereupon, entered a plea of guilty. The court pronounced sentence on the defendant. The record shows further that the defendant was not advised by the judge of the Municipal Court that he had the right to obtain counsel and, further, unnecessary to a decision in this case, that other defendants called on the same day on the traffic docket were so advised.

By the express provision of the Traffic Code of the city of Toledo, the violation thereof is a misdemeanor, and counsel for defendant concede that the charge, and conviction of defendant, is for a misdemeanor. The broad proposition urged on appeal is that a defendant charged with a misdemeanor is not only entitled to be advised by the court that he has the right to be represented by counsel, but further that such defendant, if indigent, is entitled to be furnished counsel at the expense of

the state or municipality. Counsel for the defendant cite and rely broadly upon the case of *Gideon* v. *Wainwright*, 372 U. S. 335.

In the *Gideon case* the defendant was charged in a Florida state court with a noncapital felony. He appeared without funds and without counsel and asked the court to appoint counsel for him, which was denied on the ground that the state law permitted appointment of counsel for indigent defendants in capital cases only. The facts in that case are unlike the facts in the case at bar, in that the defendant here was not charged with a felony and did not state to the court that he was without funds or ask the court to appoint counsel for him, but voluntarily entered a plea of guilty.

Subsequent to the decision in the *Gideon case,* the Supreme Court of Florida, in *Fish* v. *State* (1964), 159 So. 2d 866, held that an indigent defendant, accused of committing a crime which is a misdemeanor only, is not entitled to have counsel appointed to assist him in his defense. The opinion of that case, on page 868, says:

"Since the Gideon case, our Legislature has provided for a public defender to represent indigent defendants in all noncapital *felony* cases. By limiting the scope of the Act to felonies, the Legislature has, in effect, declared the public policy of this state to be that persons accused of misdemeanors only do not necessarily require the appointment of counsel to assist in their defense. We have carefully read the decision in the Gideon case and find nothing that indicates, conclusively, that it was intended to apply to *all* crimes—misdemeanors as well as felonies, traffic violations, any infraction of the law for which one is 'haled into court,' to quote Mr. Justice Black's language in the opinion. We have also noted the statement of Mr. Justice Harlan, in his opinion concurring in the judgment, that the question of whether the rule of the Gideon case 'should extend to *all* criminal cases need not now be decided.'

"In view, then, of the legislative background—organic and statutory—of this matter, and in the absence of any clear mandate in the Gideon case to apply its rule to misdemeanors as well as felonies, we do not feel that we are authorized to overturn the legislative declaration of the policy of this state in respect to this matter, referred to above."

In a later case, *Watkins* v. *Morris* (1965), 179 So. 2d 348,

the Supreme Court of Florida had the same issue before it on a petition for a writ of habeas corpus, whereby the petitioner sought to be released from the Hillsborough County Prison. By an affidavit complaint filed in the Hillsborough County Traffic Court, Watkins was charged on three counts with three offenses under the Florida statutes: (1) driving while intoxicated, (2) reckless driving and (3) leaving the scene of an accident resulting in injury. The court held that the Traffic Court, created under the laws of Florida, is limited in its jurisdiction to traffic violations which constitute misdemeanors, and the offense of driving while intoxicated, under the statute, is a felony, whereas the other two offenses are misdemeanors.

On page 349 in the opinion it is said:

"Petitioner also claims lack of assistance of counsel at his trial. We do not overlook *Harvey* v. *State of Mississippi*, 5 Cir., 340 F. 2d 263. However, until authoritatively determined to the contrary by the Supreme Court of the United States, the rule in Florida is that there is no absolute, organic right to counsel in misdemeanor trials. *Fish* v. *State*, Fla., 159 So. 2d 866. Moreover, the petitioner does not claim indigency or inability to have supplied his own counsel."

In the recent case of *Winters* v. *Beck* (1965), 239 Ark. 1151, 397 S. W. 2d 364, the Supreme Court of Arkansas denied a petition for writ of habeas corpus and held that there is no duty imposed upon the trial court to appoint counsel for defendant charged with immorality, a misdemeanor under an ordinance of Little Rock, Arkansas; and in the opinion, on page 1152, it is said:

"On the strength of Ark. Stat. Ann. Sec. 43-1203 (Repl. 1964), the courts of this state have always appointed attorneys to represent indigent defendants in felony cases. Thousands of misdemeanor cases are tried in the Municipal Courts of Pulaski County annually. In most of these cases the defendants are not represented by counsel. But petitioner contends that on the strength of *Gideon* v. *Wainwright*, 372 U. S. 335, it is now the duty of the courts to appoint attorneys for indigents in misdemeanor cases. We do not so construe *Wainwright*. There, the court was dealing with a felony case where the defendant had been sentenced to five years in the penitentiary. Here, the petitioner, Winters, had 30 days to take an appeal to the Circuit

Court. He did not appeal, although the procedure for appealing from the Municipal Court is very simple. The services of an attorney are not required at all.''

A petition for a writ of certiorari in the United States Supreme Court in the same case, *Winters* v. *Beck*, 87 S. Ct. 207 (October 18, 1966), was denied. There was dissent by Mr. Justice Stewart, which leaves unresolved by the Supreme Court of the United States the right to counsel in misdemeanor cases, as stated in his dissent:

''The petitioner, an indigent Negro, was arrested on a charge of 'immorality,' a misdemeanor under an ordinance of Little Rock, Arkansas. Later the same day he was brought before the municipal court, where, after pleading not guilty, he was tried, convicted, and sentenced to 30 days in jail and a $254 fine, including costs. He was unable to pay the fine, so his punishment was converted under the Arkansas 'dollar-a-day' statute (Ark. Stat. Ann. Sec. 19-2416 [Repl. 1956]) to imprisonment for 9½ months.

''At his trial the petitioner was not represented by counsel. He did not ask for the assistance of counsel and was not informed by the trial judge, or by anybody else, of any right to counsel, appointed or retained. The judge did not advise him of the nature of the charges against him, of the possible penalty, or of his right to make objections, cross-examine witnesses, present witnesses in his own behalf, or to have a trial *de novo* in the county circuit court under Ark. Stat. Ann. Sections 44-115, 509 (Repl. 1964). Not surprisingly, the petitioner did not object to the evidence offered by the prosecution, did not cross-examine the prosecution witnesses, did not present witnesses in his own behalf, and did not exercise his right to a trial *de novo* in the county circuit court. Also not surprisingly, the petitioner did not question the vagueness of the charge against him nor the validity of converting a sentence of 30 days into one of 9½ months solely because of his poverty.

''From the prison farm where he was incarcerated, the petitioner applied to the Supreme Court of Arkansas for a writ of habeas corpus, upon the ground that he had been unconstitutionally tried and convicted 'without the benefit of counsel and without being advised of his rights to counsel.' The Arkansas Supreme Court denied relief, holding that the constitutional

56

rule of *Gideon* v. *Wainwright*, 372 U. S. 335, does not apply 'in misdemeanor cases.'

"This decision of the Supreme Court of Arkansas is in conflict with decisions of the United States Court of Appeals for the Fifth Circuit, which has held that indigent defendants have a constitutional right to counsel in misdemeanor cases. *McDonald* v. *Moore*, 353 F. 2d 106; *Harvey* v. *Mississippi*, 340 F. 2d 263. This conflict must be resolved, unless the Constitution of the United States is going to mean one thing in Arkansas and something else in Mississippi.

"In *Gideon* v. *Wainwright, supra,* we said that 'any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth.' No state should be permitted to repudiate those words by arbitrarily attaching the label 'misdemeanor' to a criminal offense. *I think this court has a duty to resolve the conflict and clarify the scope of Gideon* v. *Wainwright.* I do not suggest what the ultimate resolution of this problem should be, but I do suggest that the answer cannot be made to depend upon artificial or arbitrary labels of 'felony' or 'misdemeanor' attached to criminal offenses by 50 different states. Whatever one's view may be as to the appropriate exercise of this court's certiorari jurisdiction, surely it is at least our duty to see to it that a vital guarantee of the United States Constitution is accorded with an even hand in all the states.

"For these reasons I would grant certiorari, hear argument, and decide the important issue which this case clearly presents." (Italics ours for emphasis.)

In view of the statement by Mr. Justice Harlan, concurring in the *Gideon case,* on page 351, that, "The special circumstances rule has been formally abandoned in capital cases, and the time has now come when it should be similarly abandoned in noncapital cases, at least as to offenses which, as the one involved here, carry the possibility of a substantial prison sentence. (Whether the rule should extend to *all* criminal cases need not now be decided.) * * *" and the statement by Mr. Justice Stewart in his dissent to the denial of a writ of certiorari by the Supreme Court, in *Winters* v. *Beck*, 87 S. Ct. 207, any argument, therefore, that the *Gideon case* embraces misdemeanors is wholly without merit.

The state of Ohio, like the states of Florida and Arkansas, has declared the public policy of the state of Ohio by Sections 2941.50, 2941.51 and 2953.24 of the Revised Code, which provide for appointment and payment by the state of counsel for an indigent defendant in a felony case. There is no statutory provision in Ohio for appointment and payment of counsel for an indigent defendant in misdemeanor cases.

The Circuit Court of Connecticut, Appellate Division, in *State* v. *Healy* (1962), 24 Conn. Sup. 15, 185 A. 2d 289, held that in cases involving misdemeanors the court is not required to advise an accused of his right to counsel, and that due process in a noncapital case does not require assignment of counsel. Likewise, the Court of Appeals of New York, in *People* v. *Letterio* (1965), 16 N. Y. 2d 307, 213 N. E. 2d 670, held that there is no statutory or constitutional requirement that a defendant charged with a traffic infraction be apprised of his right to counsel and to assignment of counsel. On page 311 in the opinion it is said:

"Nor do we find any constitutional mandate requiring the court hearing a traffic case to advise the defendant of his right to counsel. While some may say that the right to counsel extends to all crimes, we say that neither our state nor the federal Constitution requires the court having jurisdiction of a petty offense, like a traffic infraction, so to advise the defendant. * * * The right to counsel as ordained by the federal Constitution (*Gideon* v. *Wainwright*, 372 U. S. 335), has been considered to extend to misdemeanor cases (*Harvey* v. *State of Mississippi*, 340 F. 2d 263), but even the federal courts recognize the possibility of a rule limiting the implementation of the right to counsel in the prosecution of petty offenses (see *McDonald* v. *Moore*, 353 F. 2d 106)."

The simple circumstances of the case at bar do not present a base for a sweeping change. There are no special circumstances in the facts of this case to make such change in the law. The defendant did not have, and certainly knew that he had not procured, a license to drive a motor vehicle as provided by law. In having no such license, what could he or any astute attorney conceive as a defense? The plea then could be only the naked and unequivocal truth: Guilty. He was not caught in any complicated legal machinery that he could not understand. He drove a motor vehicle and had the average intelligence to

know that a lawyer could help him if he had any defense in truth and fact. He may have thought: "Why pay for a lawyer's service to present the inevitable and inescapable plea of guilty?" There is nothing in the record to show that defendant was too poor to hire a lawyer.

The refusal of the Supreme Court of the United States to certify (87 S. Ct. 207) the Arkansas case of *Winters* v. *Beck,* 239 Ark. 1151, 397 S. W. 2d 364, while carrying no legal implications, may be attributed to a feeling that the dislocation of the long-standing law of the case of *Betts* v. *Brady,* 316 U. S. 455, in felony cases should not so soon be further dislocated by extending the *Gideon* rule to misdemeanors, at least until a new judicial thrust of *Gideon* can gain some stability and adjustment by state courts and state law enforcement agencies, and, also, further, that that court exercises its sound judicial discretion in the interests of law and ordinarily gives no reason for the denial of a writ of certiorari. Rule 19 of the Supreme Court of the United States provides, in part:

"A review on writ of certiorari is not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor. * * *"

Indeed, we may assume that, in denying certiorari in the Arkansas case, considerations of timing by the United States Supreme Court could be involved, or that that court may have thought it does not have further sufficient considerations for review or may have believed it unwise to tackle further extension of its decision in the *Gideon case* before the state legislatures and state courts had more time to adjust and stabilize their criminal procedure as a result of a so far-reaching change in constitutional interpretation. Also implicit in the Arkansas case was the question of how far after the *Gideon case* the Supreme Court of the United States shall make a similar rule in misdemeanor cases, and thereby impose on the states uniform national standards of criminal procedure in misdemeanor cases.

The change, if any, in the law of Ohio should, perforce, have the imprimatur of the highest court of the land, by its regnant announcement in a transcendent interpretation of the United States Constitution eclipsing state sovereignty in the field of criminal procedure. When that decision is forthcoming, it may well be requiem or hosanna, according to the divergent views of the students of constitutional law.

The Supreme Court of the United States has reversed the Supreme Court of Florida in four right-to-counsel cases since 1959, and the *Gideon case* makes the fifth in which that state has been the catalyst for the innovation of the high court by intrusion into state control of its criminal procedure. It had the opportunity in the case of *Winters* v. *Beck,* 87 S. Ct. 207, to likewise make the decision in the Supreme Court of Arkansas the catalyst in misdemeanor cases. The United States Supreme Court having opened this field of neointerpretation of the Constitution of the United States, it would be patently presumptuous for this state court to speculate or anticipate what that court will finally adjudicate as to the right of counsel in misdemeanor cases to an indigent defendant at public expense. Who can foretell whether we will witness a variety of cases on the theme of "special circumstances" and "fundamental nature" of *Betts V. Brady,* 316 U. S. 455, and *Powell* v. *Alabama,* 287 U. S. 45, *Grosjean* v. *American Press Co.,* 297 U. S. 233, and *Johnson* v. *Zerbest,* 304 U. S. 458, as applicable to a decision on a rule in misdemeanor cases, or "process of absorption" within the Fourteenth Amendment, *Palko* v. *Connecticut,* 302 U. S. 319.

Today a pervasive system instituted by the Supreme Court of the United States covers almost every aspect of state criminal law enforcement, from arrest through trial and sentence to appeal. All these limitations have been developed by the United States Supreme Court, case by case, from the vague words of the Fourteenth Amendment, due process of law and equal protection of the laws. The reasoning and rule evolved in *Betts* v. *Brady,* 316 U. S. 455, of special circumstances in felony cases, overruled by the *Gideon case,* may still be viable when applied to misdemeanors, because that rule takes a hard look at the natural manifestations of the human condition. It seems that this is an inevitable imperative when we contemplate the thousands of misdemeanors committed daily, the variety of the degrees and gradations of penalties, and the enormous public subsidy, if the absolute inflexible rule of *Gideon* is to be saddled on state criminal procedure. There is something to be said for human objectivity in the legislative process as opposed to the cult of unrestrained judicial expertise. We have witnessed in recent times how judicial fiat makes it obligatory on legislatures to implement its dictates. There seems to be some under-

lying motivation that state aid to the indigent, criminal law-breaker impels a charitable act to the poor—an egalitarian philosophy injected into "due process of law." Of pragmatic interest is how to balance against the interest of the individual the interest of society. Mr. Justice Harlan of the Supreme Court in a speech in 1963 criticized what he called a "cosmic view" of a judicial function "that all deficiencies in our society which have failed of correction by other means, should find a cure in the courts" rather than in the political and legislative arena. Should the rampant increase of crime in recent times, and the colossal cost thereof, be something to be weighed on the scales of justice as to the plight of the innocent law-abiding victims of the criminal offender in economic loss, suffering and tragedy, especially when a competent lawyer paid by the state is unable to obtain an acquittance?

We have noticed the cases, cited in defendant's brief, of *Evans* v. *Rives*, 75 U. S. App. D. C. 242, 126 F. 2d 633, and *Harvey* v. *Mississippi*, 340 F. 2d 263. It will be observed that the *Harvey* case was mentioned by the Supreme Courts of Florida and Arkansas and the Court of Appeals of New York, as hereinabove quoted. The same case appears in the opinion of Mr. Justice Stewart in his dissent to overruling petition for certiorari in *Winters* v. *Beck*, 87 S. Ct. 207.

We have further read with interest the recent case in the Supreme Court of Michigan, *People* v. *Mallory* (1967), 147 N. W. 2d 66. While that case involved the question of right to counsel on an appeal, it is apparent that the decision hinged largely upon the peculiar wording of the Constitution of Michigan, and the rule-making power of its Supreme Court and statutes dissimilar from the statutes of Ohio. On page 69 in the opinion, Mr. Justice Dethmers said:

"These United States Supreme Court decisions, all involving felonies, may not necessarily be controlling of the question in the instant case relating to a misdemeanor."

All those cases we deem as secondary authority and not controlling authority in a court of Ohio. As we have stated, we believe that the law of Ohio should stand until the Supreme Court of the United States has spoken, *a priori*, to the contrary.

It is our considered judgment that the law of Ohio should

be followed in this state until a mandate comes from the Supreme Court of the United States that the concept of the right to counsel at public expense under the Sixth Amendment should be embraced within the due process clause of the Fourteenth Amendment, which applies to criminal procedure in the states in misdemeanor cases, thereby coercing the Legislature of Ohio to implement such change in accordance with the decision of such court. We do not construe Section 10, Article I of the Constitution of Ohio as mandatory on the Legislature of Ohio, or the courts of Ohio, to furnish defendants in misdemeanor cases with counsel at public expense.

In giving further consideration in depth to the general assignment of error, we find that counsel for defendant seemed to have been so preoccupied in developing a broad issue embracing the *Gideon* case that they overlooked any citation or mention of Section 2937.02, Revised Code, either in their brief or oral argument. We find a statement in their brief, however, where it is stated that it is seriously doubted whether any person should suggest that the defendant did not have the right to counsel, inferring counsel of his own choosing and paid by the defendant. The further question, therefore, before this court on the record is ramified by virtue of Section 2937.02, Revised Code, wherein it is provided:

"When, after arrest, the accused is taken before a court or magistrate, or when the accused appears pursuant to terms of summons or notice, the affidavit or complaint being first filed, the court or magistrate shall, before proceeding further:

"(A) Inform the accused of the nature of the charge against him and the identity of the complainant and permit the accused or his counsel to see and read the affidavit or complaint or a copy thereof;

"(B) Inform the accused of his right to have counsel and the right to a continuance in the proceedings to secure counsel;

"(C) Inform the accused of the effect of pleas of guilty, not guilty, and no contest, of his right to trial by jury, and the necessity of making written demand therefor;

"(* * * *)"

That statute, by its express provisions, does not limit such rights to a felony charge and is applicable to a misdemeanor charge. Neither that section nor the other sections in

Chapter 2937 of the Revised Code provide for counsel to be furnished by the court to an indigent defendant and payment of his services by the public. The record shows that defendant was not accorded the right in the magistrate's court, as is mandatory under Section 2937.02, Revised Code, to be informed of his right to have counsel.

Therefore, prejudicial error arises by failure of the court to accord the rights given to defendant by virtue of Section 2937.02, Revised Code.

We comment without decision that Section 2937.02, Revised Code, might be ineffective, first, by waiver of the defendant if such waiver is accomplished intelligently with full knowledge of the facts, and, second, where the defendant enters a plea of guilty to a misdemeanor charge, it might be said that he waives the right to assistance of counsel. See *In re Burson*, 152 Ohio St. 375, paragraph three of the syllabus, and *White* v. *Maryland*, 373 U. S. 59.

The judgment of the Common Pleas Court of Lucas County is reversed and the cause remanded to that court with instructions to reverse the judgment of the Municipal Court of Toledo and remand the cause to such court for further proceedings according to law.

*Judgment reversed.*

BROWN and STRAUB, JJ., concur.