Jones, Plaintiff in error, v. State, Defendant in error.*

*November 1—November 28, 1967.*

* Motion for rehearing denied, without costs, on January 30, 1968.

58

60

For the plaintiff in error there was a brief and oral argument by *Patrick T. McMahon* of Milwaukee.

For the defendant in error the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

WILKIE, J.   Four issues are raised by the writ of error:

1. Was certain testimony by police officers concerning the description given to them by an eyewitness improperly admitted into evidence?

2. Is the evidence sufficient to support the verdict?

3. Should the Supreme Court grant a new trial in the interest of justice, pursuant to sec. 251.09, Stats.?

4. Does a twenty-eight-day interval between arrest and advising a defendant of his right to counsel, and an additional four-day delay in appointing counsel, offend the due process clause of the fourteenth amendment?

*Improper Admission of Evidence.*

The state's first witness, Alice Allender, described the man she observed burglarizing the station. She testified that when the police arrived (within a minute or so) she told them what she had seen.

The state's second witness, Police Officer Robert McCloud, testified that he was dispatched to the burglary scene. Upon arrival, he observed a man entering Pat's Clubhouse. Officer McCloud then described the man by giving a description which was substantially the same as that given by the preceding witness. Officer McCloud was asked if he spoke to Miss Allender at the scene, and at this point defense counsel objected to the substance of any conversation between them. The objection was sustained. Subsequently the officer was asked "What did you do after you got to the tavern?" Officer McCloud answered:

"We picked out the defendant. As being the man described to us and also, as the man we had seen enter the tavern and we talked to him."

This question was not objectionable as it merely asked the officer to relate physical actions when he got to the tavern. If defense counsel did not like the officer's response to the question, he should have objected and moved that it be stricken. Later, on re-direct, Officer McCloud was asked:

"*Q.* Now when you went into the tavern, who did you walk up to as soon as you walked in? *A.* Walked up to Mr. Jones, the defendant, right away.

*"Q.* Why? *A.* Because he fit the description and he was also the man we saw enter the tavern upon arrival at the scene."

Again, no objection was made to either question or answer.

Defendant now argues that the officer's testimony was mere repetition and hearsay and should have been inadmissible. It is well established that the question of admissibility of testimony, unless specifically objected to, may not be raised on appeal.[1]

A close review of the record shows that one of the major points of the defendant's defense was an exploitation of the officer's reliance on Alice Allender's description which did not include the fact that the defendant had a beard. The following excerpt from the transcript illustrates this point:

*"Q.* Officer McCloud you just testified you walked right up to the defendant at Pat's Clubhouse for the reason that he had been the man described to you, is that correct? *A.* That is right.

*"Q.* Did the description given you include a beard? *A.* No, I don't believe so.

*"Q.* In other words, the man who had been described to you and for whom you were looking, was not described to you as having a beard, is that a fair statement? *A.* I don't remember having him being described as having a beard.

*"Q.* There is no question that the defendant has a beard, is that correct? *A.* No, no question."

Thus, even if error was committed in allowing the policeman's testimony, it could not have prejudiced the defendant.

### Sufficiency of the Evidence.

Defendant argues that the state did not prove its case beyond a reasonable doubt. The often repeated test of

---

[1] *State v. Dunn* (1960), 10 Wis. 2d 447, 459, 103 N. W. 2d 36.

the sufficiency of the evidence on appeal in a criminal case was stated in *Lock v. State:* [2]

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775; *State v. Stevens* (1965), 26 Wis. (2d) 451, 132 N. W. (2d) 502. This ultimate test is the same whether the trier of the facts is a court or a jury. *State v. Waters* (1965), 28 Wis. (2d) 148, 135 N. W. (2d) 768; *Gauthier v. State* (1965), 28 Wis. (2d) 412, 137 N. W. (2d) 101. Invariably the briefs and arguments on this issue point to what the trier of the facts could have found or what this court should determine. The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true."

The pivotal question during the trial was whether the defendant was the individual who burglarized the Clark station.

The "eyewitness" testimony of Alice Allender, standing alone, was of limited value. She testified that she watched a man burglarizing the lighted Clark station. Although she could not describe his features, she observed that he was a heavy-set Negro, about five feet, eight inches tall, wearing a dark suit, white shirt and no tie.

Her description of the burglar was related to the investigating police officers when they arrived on the scene. This description matched that of a man the officers had observed entering Pat's Clubhouse when they arrived. The officers entered the tavern and approached

---

[2] (1966), 31 Wis. 2d 110, 114, 115, 142 N. W. 2d 183.

the defendant because he matched the description given by Alice and he looked like the man they had seen entering the tavern. The defendant had a beard and Alice had not noticed one on the man she observed around the service station.

The remaining identification evidence in the case is circumstantial. Entry to the service station was accomplished by breaking the plate glass front door. Officer McCloud testified that while talking to the defendant at the tavern he observed numerous shards of glass in the defendant's hair. The state infers that the glass in the defendant's hair came from the broken glass at the station.

When the defendant was arrested, the arresting officer found him carrying some cigarettes, three packages of king-sized Chesterfields and one open pack of Salems. Mr. Schroeder testified that his inventory disclosed that, among other things, two or three packages of Chesterfield Kings were missing. Detective Suvaka testified that the "tax number" on the bottom of the cigarette packages found on the defendant was 858. This number matched the "tax number" on the bottom of the cigarette packs that remained in the rack at the station. The state's logical inference, of course, is that defendant's cigarettes came from the station.

A fingerprint was found on a package of cigarettes discovered lying on the floor of the service station after the burglary. The fingerprint matched that of the defendant.

In this web of credible evidence there is support for the jury finding of guilt. We think there is sufficient evidence so that the jury could, acting reasonably, be convinced of the defendant's guilt beyond a reasonable doubt.

### New Trial in the Interest of Justice.

Discretionary reversal of a conviction by this court under sec. 251.09, Stats., is a power that is exercised

with reluctance and great caution.[3] The power is only exercised in the event of a probable miscarriage of justice.[4] We have no "grave doubt" [5] regarding the defendant's guilt and are convinced that there has been no miscarriage of justice.

*Delay in Advising Defendant of his Right to Counsel.*

Nothing in the record indicates that the defendant was advised of his right to counsel until twenty-eight days following his arrest, even though he appeared before a magistrate on three different occasions during that period. At his fourth appearance, although the record still does not show the giving of such advice, the defendant concedes that such advice was then given.

Specifically, the record shows that on April 25, 1966, the day after defendant's arrest, he was brought before Magistrate Herbert Schultz. A warrant was issued and defendant was taken to the county courtroom of Judge F. RYAN DUFFY, JR. Judge DUFFY, sitting as a magistrate, adjourned the case until May 18, 1966, and set bail at $1,000. The defendant was unable to post a bond and was taken to jail.

On May 18, 1966, defendant appeared before Judge DUFFY and the case was again continued to May 23, 1966. Bail was reduced to $500 at this appearance.

At the May 23, 1966, appearance, the defendant claimed to be indigent. Thereupon, Judge DUFFY transferred the case to circuit court for a determination of the indigency claim. He raised the bail to $1,000.

On May 27, 1966, the circuit court, Judge COFFEY presiding, found the defendant indigent and appointed Attorney Dennis Sullivan to represent Jones.

---

[3] *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283.

[4] *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. 2d 741.

[5] *State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724.

On June 6, 1966, defendant appeared in Judge DUFFY'S court without counsel and a preliminary hearing was scheduled for June 24, 1966.

On June 8, 1966, in circuit court, Judge COFFEY, upon request of the defendant, removed Attorney Sullivan and appointed Attorney Gregory Gramling in his stead. Sullivan had never contacted the defendant. (The record is silent as to why no contact was made.)

The defendant finally posted bail on June 17, 1966. On June 24, 1966, the preliminary hearing was postponed until July 20, 1966, due to the absence of a state's witness. The preliminary was held before Judge DUFFY (sitting again as a magistrate) on July 20, 1966. Probable cause was found, and defendant was bound over to circuit court for trial.

The defendant was arraigned in circuit court on August 3, 1966, and pleaded not guilty. A jury trial was held and the defendant was convicted.

The record does not show that the defendant was advised of his right to counsel at the appearance before Magistrate Schultz, or at the April 25th or May 18th appearances before Judge DUFFY. As previously indicated, although the record does not disclose that the defendant was advised at the May 23d appearance, defendant concedes that this was done.

The time at which an accused must be advised of his right to counsel is prescribed by statute. Sec. 957.26 (1), Stats., provides:

"A person charged with a crime shall, *at his initial appearance before a court or magistrate,* be advised of his right to counsel and, that in any case where required by the United States or Wisconsin constitution, counsel, unless waived, will be appointed to represent him at county expense if he is financially unable to employ counsel. A record of such advice and of the defendant's reply, if any, shall be made in the docket or reported." (Emphasis added.)

There has been a clear failure to comply with the provisions of the statute. Failure to comply with this statute does not, per se, necessitate a reversal of the

conviction. This is especially true when the mandate of sec. 957.26 (2), Stats., requiring that counsel actually be appointed "prior to any plea and prior to any preliminary examination," has been satisfied.[6]

This statutory requirement, sec. 957.26 (2), was enacted following our holding in *Sparkman v. State*[7] adopting the rule (prospective only) that as a matter of public policy an indigent is entitled to counsel "at or prior to a preliminary hearing unless intelligently waived."[8] In *Sparkman* we expressly reserved judgment on the question of whether an accused has a constitutional right to counsel at his preliminary hearing. The United States Supreme Court, in *Pointer v. Texas*[9] also expressly reserved that question.

In *Sparkman,* both Mr. Justice HALLOWS (the author of that opinion) and the writer of this opinion would have reached the constitutional question. So here, the writer and Mr. Justice HALLOWS would reach the constitutional question and would hold that an indigent accused has a constitutional right to have counsel appointed at his initial appearance before a magistrate following his arrest on the ground that this appearance is a step in the "criminal prosecution" within the meaning of art. I, sec. 7 of the Wisconsin Constitution.[10]

---

[6] *See Sparkman v. State* (1965), 27 Wis. 2d 92, 101, 133 N. W. 2d 776, where we state that failure to comply with the procedure codified in sec. 957.26 (2), Stats., is subject to the harmless-error rule. *See also Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

[7] *Supra*, footnote 6.

[8] *Id.* at page 98.

[9] (1965), 380 U. S. 400, 85 Sup. Ct. 1065, 13 L. Ed. 2d 923.

[10] Wis. Const. art. I, sec. 7. "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

However, a majority of the court does not reach that question in view of our determination that all that presently is required is that the appointment be made at least by the preliminary and that was done in the instant case.[11]

We are greatly disturbed, however, by the fact that there was such a long interval here between arrest and the appointment of counsel.

In the very recent case of *Wolke v. Rudd* [12] there was an eleven-day delay in the court appointment of counsel after the defendant made his initial appearance and advised the court that he was indigent and desired counsel. The defendant filed a habeas corpus petition with the circuit court alleging that too much time had elapsed between arrest and appointment of counsel and that during this interval he had forgotten many facts. The circuit court discharged the defendant and barred the reinstitution of the charges. On the state's writ of error this court reversed, saying that the eleven-day delay was "regrettable and should be avoided in a properly administered system of justice." [13]

The regrettable delay in the instant case exceeded the delay which we condemned in *Rudd*. Certainly these delays should be minimized in our criminal justice system. To effectuate that end we adopt a rule, for prospective application only, that at an indigent defendant's initial appearance before a court or magistrate he be advised of his right to counsel and that counsel be appointed at that time unless intelligently waived.[14]

[11] Special circumstances may exist which would give rise to a constitutional right to counsel at an earlier point in the criminal process. *For example,* custodial interrogations (*Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694) or a lineup (*United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149).

[12] (1966), 32 Wis. 2d 516, 145 N. W. 2d 786.

[13] *Id.* at page 520.

[14] Where magistrates make such appointments they should do so under the direction of a trial court. In Milwaukee county such appointments should be made consistent with the procedure set forth in sec. 957.26 (2), Stats.

This rule will assure the invaluable assistance of counsel at a time close to the threshold of the criminal process, when, following his arrest, the accused makes his initial appearance before a magistrate or court. This earlier appointment of counsel will afford the accused the assistance of counsel in setting his bail at a reasonable figure. Such counsel can aid the accused in making important decisions on whether to have, waive, or postpone the preliminary hearing.

The most compelling reason for appointing counsel at the initial appearance is that counsel's presence undeniably aids the fact finding, guilt-determining ends of our criminal justice system. Counsel will be better able to locate possible alibi witnesses and preserve their testimony. The earlier appointment will afford an accused a better opportunity to effectively prepare his defense not only at the preliminary but also at the trial itself.

The rule enunciated here establishes the precise point "prior to" a preliminary examination when an accused is entitled to counsel. It is a logical extension of the principle declared in *Sparkman*.

*By the Court.*—Judgment affirmed.

The following memorandum was filed February 5, 1968.

PER CURIAM (*on motion for rehearing*). The court's opinion makes it clear that at all initial appearances after the *Jones* mandate (November 28, 1967), an accused shall, as a matter of public policy, be advised of his right to counsel and have counsel appointed by the court if he is indigent. We, however, did not expressly state that the defendant Jones was entitled to the rule set forth in the opinion. Such has been our practice in all cases wherein this court has set aside an existing rule of law in favor of a new rule having prospective

application only. Our practice of giving the benefit of the new rule to the party who litigates the question applies in this case. In this respect we adhere to the policy of *Great Northern Ry. v. Sunburst Oil & Refining Co.* (1932), 287 U. S. 358, 53 Sup. Ct. 145, 77 L. Ed. 360.

In footnote 6 of the court's opinion, we made it clear that our holding that an accused is entitled to counsel at the initial appearance is subject to the "harmless-error" rule. *See* also *Wolke v. Rudd* (1966), 32 Wis. 2d 516, 145 N. W. 2d 786.

We failed, however, to state reasons why the error in this case is harmless. The defendant's claim of prejudice is founded principally on the fact that his confinement without counsel prevented a timely investigation to search for alibi witnesses. His claim is:

"That there are and were several witnesses who were present in the tavern where affiant was arrested, and several witnesses in another tavern from which affiant had come to the tavern where he was arrested, who, if found, would have to testify that affiant was in their presence at the time of the commission of the burglary with which affiant is charged."

This claim is wholly frivolous in view of defendant's testimony at trial. Therein he stated that he was continuously at Pat's Clubhouse from 5:30 p. m. until arrested sometime after 12:20 on the following morning.

This is wholly inconsistent with his present claim that he wished to produce witnesses who were with him in another tavern at approximately 12:20—the time of the burglary. In light of his conflicting trial testimony, his claim of prejudice is clearly without merit. While we apply the rule of the case to the present defendant, we find the error in failing to provide Jones with counsel at his initial appearance was nonprejudicial and harmless.

The motion for rehearing is denied without costs.