STATE EX REL. PLUTSHACK, Petitioner, v. DEPARTMENT OF
HEALTH & SOCIAL SERVICES, Respondent.*

*November 1, 1967—February 2, 1968.*

---

* Motion for rehearing denied, without costs, on April 9, 1968.

714

716

For the petitioner there was a brief and oral argument by *Robert H. Friebert,* public defender.

For the respondent the cause was argued by *Thomas A. Lockyear,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

Briefs *amici curiae* were filed by *John A. Koshalek* and *Riley, Pierce, Lynch & Garner,* all of Madison, for the

Wisconsin Civil Liberties Union; by *Joseph F. Preloznik* of Madison, for Wisconsin Judicare; and by *Dennis J. Purtell* of Milwaukee, for Milwaukee Junior Bar Association.

CONNOR T. HANSEN, J. The issues raised by the petitioner and the respondent cause us to direct our attention to three specific situations.

(1) Is an indigent defendant entitled to appointment of counsel, at public expense, when he is charged with a misdemeanor as defined by the Wisconsin statutes?

This question is as perplexing as it is controversial and has caused much difficulty throughout the country.

Any consideration of this question today must start with *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799. Factually, the *Gideon Case* involved a felony conviction. While the denial of a writ of certiorari may not be considered as precedent, it is of interest to note that on three recent occasions the Supreme Court of the United States has declined to review cases involving the question of appointment of counsel for misdemeanants. In *Cortinez v. Flournoy* (1966), 385 U. S. 925, 87 Sup. Ct. 314, 17 L. Ed. 2d 222, the court declined to review a decision of a Louisiana court; likewise in *DeJoseph v. Connecticut* (1966), 385 U. S. 982, 87 Sup. Ct. 526, 17 L. Ed. 2d 443, the court denied certiorari in a case decided by a Connecticut court. The same situation prevailed in *Winters v. Beck* (1966), 385 U. S. 907, 87 Sup. Ct. 207, 17 L. Ed. 2d 137, in which case the court was aware that in Arkansas some offenses denominated misdemeanors may be punished by imprisonment for as long as three years. 385 U. S. 907, at 908, footnote 1.

Also, it is noted that in two recent decisions of the United States Supreme Court, both decided in November, 1967, and relating to the appointment of counsel for indigent defendants at various stages in criminal proceedings, the court appears to have restricted its rulings to

felony cases. *Mempa v. Rhay* (1967), 389 U. S. 128, 88 Sup. Ct. 254, 19 L. Ed. 2d 336; *Burgett v. Texas* (1967), 389 U. S. 109, 88 Sup. Ct. 258, 19 L. Ed. 2d 319.

The aftermath of *Gideon, supra,* has produced a variety of results when state courts have endeavored to interpret its holding as it might affect persons charged with misdemeanors.

Several jurisdictions have decided that an accused is not entitled as a matter of right to state appointed counsel in misdemeanor cases. *Fish v. State* (Fla. 1964), 159 So. 2d 866; *Toledo v. Frazier* (1967), 10 Ohio App. 2d 51, 226 N. E. 2d 777; *Winters v. Beck, supra.*

Other states have held to the contrary. *In re Johnson* (1965), 42 Cal. Rptr. 228, 398 Pac. 2d 420; *Tacoma v. Heater* (Wash. 1966), 409 Pac. 2d 867 (traffic offense); *Taylor v. Griffin* (1966), 113 Ga. App. 589, 149 S. E. 2d 177; *Minnesota v. Borst* (Minn. 1967), 154 N. W. 2d 888 (all misdemeanors).

Still a third position, one of a somewhat middle ground, and one upon which we look with favor, has been followed in other states. *State v. Hayes* (1964), 261 N. C. 648, 135 S. E. 2d 653; *Creighton v. North Carolina* (D. C. N. C. 1966), 257 Fed. Supp. 806; *State v. Anderson* (1964), 96 Ariz. 123, 392 Pac. 2d 784; *State v. DeJoseph, supra.*

These cases are authority for the proposition that state appointed counsel in misdemeanor cases is required only when the accused is charged with a misdemeanor of such gravity, and under such circumstances, that the trial court in the exercise of its sound discretion, deems that justice so requires.

Art. I, sec. 7 of the Wisconsin constitution, provides in part:

"In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."

It is urged that this constitutional provision, in effect, requires state appointed and state compensated counsel

for indigent defendants in all misdemeanor cases. We recognize that some jurisdictions, when called upon to do so, have so interpreted similar constitutional provisions. Other jurisdictions have not so construed similar constitutional provisions. The Ohio Supreme Court in *Toledo v. Frazier, supra,* held that a similar constitutional provision did not ipso facto require state appointed and state paid counsel for indigent defendants in all misdemeanor cases.

The rationale of *In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct. 1428, 18 L. Ed. 2d 527, which addresses itself to the appointment of counsel for juveniles in juvenile court proceedings is also significant in that it elucidates the concern of the United States Supreme Court for the seriousness of the offense or possibility of substantial confinement.

*In re Gault, supra,* page 29:

". . . If he had been over 18 and had committed an offense to which such a sentence might apply, he would have been entitled to substantial rights under the Constitution of the United States as well as under Arizona's laws and constitution. The United States Constitution would guarantee him rights and protections with respect to arrest, search, and seizure, and pretrial interrogation. It would assure him of specific notice of the charges and adequate time to decide his course of action and to prepare his defense. He would be entitled to clear advice that he could be represented by counsel, and, at least *if a felony were involved, the State would be required to provide counsel if his parents were unable to afford it.* If the court acted on the basis of his confession, careful procedures would be required to assure its voluntariness. If the case went to trial, confrontation and opportunity for cross-examination would be guaranteed. So wide a gulf between the State's treatment of the adult and of the child requires a bridge sturdier than mere verbiage, and reasons more persuasive than cliché can provide. . . ." (Emphasis added.)

A basic concern of this court must be to strive for greater fairness in the administration of criminal justice.

This contemplates protection of the innocent from wrongful conviction, and a concern for the poor as well as for the affluent. A correlative consideration, nevertheless, must be to protect society from burdens that, if intolerable, might impair the administration of justice. Achieving the proper equilibrium between these important considerations inherently requires that standards be established, thus presenting a situation in which it is difficult to achieve an ideal result.

August 20, 1964, after *Gideon, supra,* the United States Congress enacted the Criminal Justice Act of 1964, Pub. L. 88–455, 78 Stat. 552, as amended, now 18 U. S. C. A. sec. 3006A.

Subsection (b) U. S. C. A. sec. 3006A provides as follows:

"(b) **Appointment of counsel.**—In every criminal case in which the defendant is charged with a felony or a misdemeanor, *other than a petty offense,* and appears without counsel, the United States commissioner or the court shall advise the defendant that he has the right to be represented by counsel and that counsel will be appointed to represent him if he is financially unable to obtain counsel. Unless the defendant waives the appointment of counsel, the United States commissioner or the court, if satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel, shall appoint counsel to represent him. The United States commissioner or the court shall appoint separate counsel for defendants who have such conflicting interests that they cannot properly be represented by the same counsel, or when other good cause is shown. Counsel appointed by the United States commissioner or a judge of the district court shall be selected from a panel of attorneys designated or approved by the district court." (Emphasis added.)

18 U. S. C. A. sec. 1 (3) defines "petty offense" as any misdemeanor, the penalty for which does not exceed imprisonment of six months or a fine of not more than $500, or both.

The obvious and fundamental purpose of the Criminal Justice Act is to provide legal assistance to indigent

defendants in criminal cases. See Preamble to Criminal Justice Act, *supra*.

"The Criminal Justice Act is a means of implementing what the courts have declared to be a constitutional demand (right of counsel) under the Sixth Amendment and its inclusion in the due process clause of the Fourteenth Amendment." *Ray v. United States* (8th Cir. 1966), 367 Fed. 2d 258, 264.

This legislative recognition has apparently presented a solution, although perhaps only of an interim nature, to the many practical questions which have arisen and undoubtedly inhibited the extension of *Gideon*. Judge BLUMENFELD, in the recent case of *Arbo v. Hegstrom* (D. C. Conn. 1966), 261 Fed. Supp. 397, 400, discussed this very point.

"Of course, from a pragmatic point of view, one can not help but struggle to find some rational line beyond which the absolute right to counsel becomes merely a privilege to be provided only as the particular tribunal sees fit. Although the administration of criminal justice is cloaked in abstract principles, these principles are jeopardized if the system could conceivably break under the sheer weight of the demands which it imposes. On a federal level, the recent Criminal Justice Act of 1964, 18 U. S. C. sec. 3006A, in recognition of the heavy burden which a requirement of counsel in every criminal case would impose, has made a practical and fair compromise with an absolute rule by prescribing appointment of counsel in other than 'petty offense' cases."

The provisions of the Criminal Justice Act received recent recognition in *Brinson v. Florida* (1967), 273 Fed. Supp. 840, which discussed *Gideon* in terms of *In re Gault, supra,* and concluded that the seriousness of the offense charged has a direct bearing on the constitutional right of counsel. Consequently, the court held that right to counsel in nonfelony cases depends upon the maximum possible penalty under the offense charged since this is the test of whether or not a "serious offense" is in-

volved. The practical standard employed to determine this question was held to be the Criminal Justice Act of 1964, which imposes the obligation to appoint counsel for indigents in all cases involving a penalty of more than six months' imprisonment or a $500 fine, or both.

We also find a recommendation in the report of the President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society*. The commission recommends the following (p. 150):

"The objective to be met as quickly as possible is to provide counsel to every criminal defendant who faces *a significant penalty,* if he cannot afford to provide counsel himself. This should apply to cases classified as misdemeanors as well as to those classified as felonies. Counsel should be provided early in the proceedings and certainly no later than the first judicial appearance. The services of counsel should be available after conviction through appeal, and in collateral attack proceedings when the issues are not frivolous. The immediate minimum, until it becomes possible to provide the foregoing is that all criminal defendants who are in danger of *substantial loss of liberty* shall be provided with counsel." (Emphasis added.)

The language of the Criminal Justice Act and the recommendation of the President's Commission on Law Enforcement and Administration of Justice are, of course, not binding on the state courts. However, in the absence of specific standards established by the legislature and a mandate from the United States Supreme Court, they do furnish guidelines. As such, the implication is that they follow the "substantial sentence" approach of Mr. Justice HARLAN in the concurring opinion in *Gideon*.

Also use of such an approach to the appointment of counsel for indigent misdemeanants would be entirely consistent with the two prior Wisconsin decisions which considered this question. *Melvin v. Burke* (D. C. Wis.

1963) (unreported) File No. 63–C–52, cited in 36 Wisconsin Bar Bulletin 62 (October, 1963); *State ex rel. Barth v. Burke* (1964), 24 Wis. 2d 82, 128 N. W. 2d 422.

We have been furnished statistics (contained in the briefs) which reflect the practice presently employed in some 27 counties in Wisconsin as it relates to the appointment of counsel for indigent defendants in misdemeanor criminal cases. Some of these statistics are from less populous counties and others from metropolitan areas. While these figures demonstrate a lack of uniformity, they likewise demonstrate the characteristic concern of the trial courts of the state in matters of serious public consequence. While we were not submitted statistics on the practice and procedure followed by the balance of the trial courts of the state, we have no reason to believe such practice and procedures would be substantially different than those presently before us.

The information which is available to us reflects that in most instances the trial courts for the reported counties appoint counsel for indigent misdemeanants on varying standards.

We conclude that the decision in *Gideon* and subsequent judicial determinations relating thereto have not reached the constitutional proportion of extending the right of indigents to the appointment of counsel, so as to include all misdemeanors as defined by the Wisconsin statutes. Therefore, it is not determined whether there is a constitutional right of an indigent to the appointment of counsel which encompasses all misdemeanors. However, it is our opinion that the substance of the rule presently set forth in the United States Criminal Justice Act, *supra,* establishes appropriate guidelines. Hence, to insure the fair administration of justice we here decide that counsel should be provided, in accordance with rules established by previous decisions of this court, in the case of all indigents charged with a misdemeanor when the maximum penalty for imprisonment exceeds six months and

in such other cases in which the trial court, in the exercise of its sound discretion, deems it necessary and desirable in order to attain the best interest of justice.

(2) Is an indigent defendant entitled to the appointment of counsel at public expense when he is charged with three separate misdemeanors which, upon conviction, could possibly subject him to imprisonment for a total of eighteen months?

Until January 15, 1966, our statute relating to the appointment of counsel for indigent defendants provided in part as follows:

"957.26 **Counsel for indigent defendants charged with felony; advice by court.**
(1) Courts of record may appoint counsel for defendants charged with *felonies* and who are without means to employ counsel. . . ." (Emphasis added.)

Ch. 519, Laws of 1965, amended sec. 957.26, Stats., effective as of January 15, 1966, so as to provide:

"957.26 **Counsel for indigent defendants charged with felony; advice by court.**
"(1) A person charged with a *crime* shall, at his initial appearance before a court or magistrate, be advised of his right to counsel and, that in any case where required by the United States or Wisconsin constitution, counsel, unless waived, will be appointed to represent him at county expense if he is financially unable to employ counsel. A record of such advice and of the defendant's reply, if any, shall be made in the docket or reported." (Emphasis added.)

In view of the fact sec. 957.26, Stats., was amended by ch. 519, Laws of 1965, which amendment became effective after the August, 1965 conviction of Plutshack on the three misdemeanors and the fact that he has long since served the seventy-five-day sentence which was imposed thereon, a consideration of this matter at this time may be of no solace to the petitioner. However, we deem the

question of sufficient public importance to require consideration.

A review of many authorities leads us to but one conclusion. That conclusion is that under the existing case law, statutory requirements and constitutional provisions, both state and federal, an indigent person charged with a series of crimes which could, upon his conviction, subject him to a possible sentence of eighteen months, is entitled to the appointment of counsel at public expense, and the established instructions from the trial court as to his rights in this regard.

See *Melvin v. Burke, supra.*

(3) Can the sentencing provisions of the repeater statute (sec. 939.62, Stats.) be invoked without the sentencing court first determining the constitutional validity of the underlying misdemeanor?

Authorities differ as to whether the constitutional validity of prior convictions should first be determined by the sentencing court before it invokes the provisions of a repeater statute.

The case before us concerns misdemeanors only. It appears that none of the authorities to which our attention has been directed, or which we have examined, are concerned with misdemeanor convictions. Those to which our attention has been directed relate to felony cases and the authorities differ as to whether a sentencing court is charged with the responsibility of determining the constitutional validity of prior felony convictions when invoking the provisions of a repeater statute.

As to the validity of prior misdemeanor convictions relied on for the enhancement of the punishment for a later misdemeanor offense, we here determine that the validity of former misdemeanor convictions cannot be collaterally attacked in a proceeding for additional punishment under the repeater statute on a subsequent misdemeanor conviction for the reason that the former convictions are valid until reversed. 24B C. J. S., *Crim-*

*inal Law*, p. 477, sec. 1961. Such prior misdemeanor convictions may not be subjected to collateral attacks. *See State v. Garcia* (1966), 3 Ariz. App. 194, 412 Pac. 2d 876, 265 Fed. Supp. 951 (involving *felony*).

In considering the invoking of our statute for increased penalties for habitual criminality of misdemeanant, the importance of the prior convictions is that they occurred but did not prevent subsequent violations. *Ingalls v. State* (1880), 48 Wis. 647, 658, 4 N. W. 785. Whether or not prior misdemeanor convictions are procedurally antiseptic in no way affects the fact that prior contact with the criminal law has not prevented subsequent violations.

A defendant charged as a repeater may not be heard to profess his innocence of misdemeanors for which he has been previously convicted, or reversible error in those convictions, absent actual reversal or pardon on the ground of innocence, sec. 939.62 (2), Stats.

Likewise, he cannot be heard to collaterally allege constitutional errors, if any, which in no way affect his guilt of the prior misdemeanor offenses. To hold otherwise, when the state is attempting to prosecute the misdemeanant habitual criminal offender, would place upon the state the responsibility of the procedural regularity of all prior Wisconsin misdemeanor convictions as well as those from other state and federal jurisdictions. The practical, but entirely unjust result, would in effect limit the application of repeater statute as to misdemeanants to prior misdemeanor convictions within the state of Wisconsin.

*By the Court.*—Writ of habeas corpus denied.

ROBERT W. HANSEN, J., took no part.

HALLOWS, C. J. and WILKIE, J. (*dissenting, in part*). We would decide the constitutional question raised and hold the Wisconsin constitution, art. I, sec. 7, providing "In all criminal prosecutions the accused shall enjoy the

right to be heard by himself and counsel . . ." extends to all misdemeanors and if an accused misdemeanant is indigent, he has a right to appointed counsel. Under the theory expounded in *State ex rel. Offerdahl v. State* (1962), 17 Wis. 2d 334, 116 N. W. 2d 809, that "criminal prosecutions" meant only the actual trial, this court while granting counsel to an indigent has consistently not recognized the constitutional basis of the right to such counsel. *Sparkman v. State* (1965), 27 Wis. 2d 92, 133 N. W. 2d 776; *Jones v. State,* ante, p. 56, 154 N. W. 2d 278.

We think the *Offerdahl* construction of the constitution is wrong and should be overruled. For the reasons we stated in *Sparkman* and in *Jones,* we think the phrase "In all criminal prosecutions" in the Wisconsin constitution includes all misdemeanors and includes the full scope of the prosecution, not just the determination of the guilt issue. True, in Wisconsin many traffic violations are both crimes under the state law and merely violations under a municipal ordinance. Whether an indigent traffic violator is constitutionally entitled to counsel depends on whether he is charged with a crime or an ordinance violation.

But, on the question of right to counsel we would join with the other jurisdictions cited in the majority opinion and place the granting of counsel to an indigent misdemeanant on constitutional grounds.

The following memorandum was filed April 9, 1968.

PER CURIAM (*on motion for rehearing*). The state public defender has made a motion for rehearing and filed a brief in support of the motion. Briefs amicus curiae were also filed in support of the motion. The motion is denied with this sole comment: The brief of the state public defender in support of the motion for rehearing refers to the prior conviction of November 21, 1965, for disorderly conduct and resisting an officer as a

municipal ordinance conviction. This is merely an allegation of the state public defender and entirely unsupported by the record. The judgment of conviction and sentence, sentencing petitioner under the repeater statute, states the November 21st conviction was "for drunk and disorderly conduct and resisting an officer, contrary to Section 947.01 of the Wisconsin Statutes." Under the law of Wisconsin the violation of a misdemeanor statute is against the peace and dignity of Wisconsin and a criminal act. A violation of a municipal ordinance is a forfeiture and a civil action.