Hubert CREIGHTON, Petitioner,

v.

STATE OF NORTH CAROLINA and Major W. C. Brown, Director of Harnett Prison Camp, No. 700, Respondents.

Civ. A. No. 1869.

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 15, 1966.

Anthony M. Brannon, Durham, N. C., for petitioner.

Thomas W. Bruton, Atty. Gen. of N. C., for respondents.

OPINION and JUDGMENT

DALTON, District Judge.

This cause comes before the court upon a petition for habeas corpus, filed *in forma pauperis* by a State prisoner pursuant to the provisions of 28 U.S.C. § 2254 (1959).

At the March 1964 term of the Alamance County, North Carolina, Superior Criminal Court Hubert Creighton, the petitioner, was convicted of "Unlawfully Entering a Building Without Intent to Commit a Felony" and was sentenced to a period of incarceration of two years. While serving this two year sentence (which was completed on January 17, 1966), he escaped three times. To date, Creighton has been tried for only two of these escapes. The first (on March 8, 1964) was tried in the Durham County Recorders Court on March 10, 1964, and petitioner was sentenced to six months in jail, "this sentence to begin at the end of the present sentence" (for unlawful entry). On March 13, 1964, petitioner was tried and convicted in the Durham County Court of "Attempt to Commit a Felony", which

attempt was made on March 9, 1964, the day after the escape. For this offense Creighton was sentenced to a term of twelve months in jail, which sentence was to begin at the expiration of the escape sentence.

The second escape was tried in the Superior Court of Johnston County, North Carolina on October 27, 1964, and petitioner was sentenced to six months in jail to begin upon the completion of service of sentences imposed for escape in the Durham County Recorders Court and for unlawful entry imposed in the Superior Court of Alamance County.

Petitioner was not represented by counsel at his trials on the two misdemeanor charges in the Durham County Recorders Court, and the basis for his present petition is that this court should construe Gideon v. Wainwright, 372 U.S 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as requiring that counsel be appointed to represent indigents tried for misdemeanors.

Creighton did not appeal the two judgments complained of, but later filed a writ of habeas corpus in the Durham County Superior Court, which writ was denied on February 18, 1965. Petitioner then sought relief in the Supreme Court of North Carolina, but this petition was also denied without prejudice to his right to file a Post Conviction petition under N.C.G.S. § 15–217 et seq. A post conviction hearing was then held before the Honorable Hamilton H. Hobgood, Judge Presiding, at the February 1966 Criminal Term of the Durham County Superior Court, and that court found as a matter of law that Creighton was not entitled to relief.

Application for a writ of certiorari to review the post conviction hearing was denied by the Supreme Court of North Carolina on May 3, 1966. Petitioner, therefore, has exhausted all his state remedies.

Creighton's present status, as this court understands it, is as follows: he has completed the service of the sentence for unlawful entry imposed by the Alamance County Superior Court and the six month sentence for escape imposed by the Durham County Recorders Court. He is now serving the twelve month sentence imposed by that court concurrently with the six month sentence imposed by the Johnston County Superior Court. Since petitioner has not complained of (or even mentioned) the latter sentence, the question for decision here involves only the sentence imposed by the Durham County Recorders Court for the attempt to commit a felony. It follows, then, that even if this court should decide that petitioner was denied due process in that action, the sentence for escape from the Johnston County Court will stand and prevent Creighton's release until the start of the final six months of the unlawful entry sentence.

In Gideon v. Wainwright, supra, the Supreme Court of the United States applied the Sixth Amendment's guarantee of right to counsel to the States. *Gideon*, however, involved a felony conviction, and the Supreme Court has never directly passed upon whether the rule of that decision extends to misdemeanors. As Mr. Justice Harlan pointed out in his concurring opinion, "whether the rule should extend to *all* criminal cases need not now be decided." 372 U.S. at 351, 83 S.Ct. at 801.

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." U.S.Const. Amend. VI. Since this mandate is not automatically binding upon the States in and of itself, it was necessary for the Supreme Court to decide that the right to counsel is "fundamental and essential to a fair trial" and, as such, is applicable to the States "through" the due process clause of the Fourteenth Amendment.

With this background as a starting point the right to counsel, from a strict and literal point of view, would seem applicable in misdemeanors, perhaps even to so minor a violation as a $1.00

parking ticket, since the Sixth Amendment, by its very terms, applies to *"all criminal prosecutions."* (Emphasis supplied). Further, since the right to counsel was applied through the Fourteenth Amendment and hence involves due process, it would not require tortured logic to apply the mandate of the Sixth to *civil* cases as well, since no State may "deprive any person of life, liberty, or *property,* without due process of law; * * *." (Emphasis supplied). U.S.Const. Amend. XIV. One might well imagine a situation in which an indigent unable to employ counsel is sued for alleged negligence arising out of an automobile accident. If a verdict is returned against him, he will certainly be deprived of property, if, in fact, he has any property to be deprived of. Therefore, if he has not had the assistance of counsel, he has not been accorded due process of law.

From an idealistic point of view, such a result might seem desirable since injustice is repugnant even in such a minor matter as a $2.00 traffic summons. Everyone called upon to answer a charge in a court of law, whatever his alleged offense, should have the best representation possible to minimize the chance of even a small (from a materialistic or monetary point of view) miscarriage of justice. However, unfortunate as it may seem to some, we live in a society where practical considerations must be taken into account. It seems obvious that counsel must be appointed to represent an indigent on trial for his life; it seems equally obvious that it is untenable to appoint counsel for an indigent who has parked too near a fireplug. Somewhere in between these two extremes a line must be drawn— the question for decision today is where.

Language may be found in several Supreme Court decisions, particularly those of Johnson v. Zerbet, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947), and Bute v. People of State

of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948), which support a contention that the right to counsel exists in *all* criminal prosecutions, regardless of their nature and severity of penalty. (The above cases all involve federal crimes, but the interpretation of the Sixth Amendment would presumably be the same when a State prosecution is involved.) However, it is instructive to note the language used by Mr. Justice Douglas in his dissent in *Bute.* He said:

> A man who suffers up to 20 years in prison as a penalty is undergoing one of the most serious of all punishments. It might not be nonsense to draw the Betts v. Brady line somewhere between that case and the case of one charged with violation of a parking ordinance, and to say the accused is entitled to counsel in the *former* but not in the latter. * * * Yet it is the *need* for counsel that establishes the real standard for determining whether the lack of counsel rendered the trial unfair. * * * That need is measured by the *nature* of the *charge* and the *ability* of the *average* man to face it alone, unaided by an expert in the law. 333 U.S. at 682, 68 S.Ct. at 784.

It is true that at the time *Bute* was decided the Court was still bound by its decision in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). This fact, however, does not diminish the persuasiveness of the above quotation, since Mr. Justice Douglas was always of the opinion that *Betts* was "an anachronism when handed down." It must be assumed, therefore, that his reasoning was not influenced by the fact that *Betts* was still the law, and his words have as much force today as they did when written.

In the case of Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948), Mr. Justice Reed noted that some members of the Court were of the opinion that the Sixth Amendment, through the

Fourteenth, guarantees counsel in *all* state criminal proceedings where serious crimes are charged. Others, he said, believed that each case (excluding those involving capital punishment, depends on its own facts. "The philosophy behind both of these views is that the due process clause of the Fourteenth Amendment or the Fifth Amendment requires counsel for all persons charged with serious crimes, when necessary for their adequate defense, in order that such persons may be advised how to conduct their trial." 335 U.S. at 441, 69 S.Ct. at 186.

■ The above quotations indicate that the right to counsel is not an end in itself, but rather a means for achieving the most perfect justice possible in a given situation. This fact is implicit in the nature of the Constitution itself, as that document was not framed for the purpose of providing an exercise in abstract idealism but as a practical guide for the management of the affairs of this country and the protection of the rights of its citizens. It seems clear to this court that in the complex society in which we find ourselves there can be no truly "absolute rights." The First Amendment guarantees the right to free exercise of the religion of one's choice. On its face, this is absolute. However, if one's religion requires a daily human sacrifice, it seems safe to say that this would not be held to be constitutionally protected. A less extreme and much more common example occurs when the "absolute" right to freedom of speech is curtailed and qualified by libel and slander laws.

■ Likewise, the Sixth Amendment guarantees the right to counsel in *all* criminal prosecutions on its face, another "absolute" right. However, this court believes, and it is thought that the Supreme Court has so indicated, that the right to counsel must be somewhat qualified by practical exigencies. A balance must be struck between what might be thought to be an ideal situation (i. e., counsel being always available regardless of the nature of the case) and what is humanly possible to achieve. Above all, the administration of justice must not be thrown into senseless chaos. As pointed out in United States v. Dardi, 330 F.2d 316 (2d Cir. 1964), the exercise of the right to counsel must be subject to the necessities of sound judicial administration.

Several cases have decided that an accused is not entitled as a matter of right to state appointed counsel in misdemeanor cases. See, for example: Watkins v. Morris, 179 So.2d 348 (Fla.1965); Fish v. State of Florida, 159 So.2d 866 (Fla.1964); State v. Davis, 2 Conn.Cir. 257, 197 A.2d 668 (1963), citing United States ex rel. Farnsworth v. Murphy, 254 F.2d 438 (2d Cir. 1958), and State v. Reid, 146 Conn. 227, 149 A.2d 698 (1959).

Other states, notably California, have statutes requiring that counsel be appointed in all criminal cases, including misdemeanors. In re Johnson, 62 Cal. 2d 325, 42 Cal.Rptr. 228, 398 P.2d 420 (1965); Avan v. Municipal Court, 41 Cal.Rptr. 15 (Dist.Ct.App. 1964).

Still a third group of decisions have taken a middle ground, saying that state appointed counsel is required only when an accused is charged with a misdemeanor of such gravity that the judge, in the exercise of sound discretion, deems that justice so requires. State v. Hayes, 261 N.C. 648, 135 S.E.2d 653 (1964). See also: State v. Hedgebeth, 228 N.C. 259, 45 S.E.2d 563 (1947).

■ This court agrees with the approach taken in the *Hayes* case, supra. It recognizes that some misdemeanors involve punishment which results in a substantial deprivation of liberty (or property) and, in such cases, counsel should be appointed to those unable to afford adequate representation. On the other hand, it also recognizes that some offenses must be considered so minor that due process does not and cannot require that the guiding hand of counsel

be provided to one charged with such a violation. An interesting and persuasive application of this type of theory occurs in the case of McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965), wherein the Court of Appeals for the Fifth Circuit decided that counsel should have been appointed to the accused in that case who had been charged with a misdemeanor. The Court especially noted that in Florida some misdemeanors were punishable by imprisonment up to *seven years* and said, at pages 108 and 109 of the opinion:

> It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available. Even with the assistance of law students, whose services may be requested under some of the Criminal Justice plans, the demand might come near exceeding the supply.

See also: Harvey v. State of Mississippi, 340 F.2d 263 (5th Cir. 1965), and Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633 (1942), for discussions of the appointment of counsel in misdemeanor cases.

The court believes it unwise to set up arbitrary categories of misdemeanors and hold that in one category an accused is entitled to counsel, while in another he is not, preferring instead to leave the matter to the discretion of the trial judge as per the *Hayes* case, supra.

An examination of two recent New York decisions will suffice to demonstrate the anomalous results which can be reached when various offenses are pigeonholed with respect to the appointment of counsel. In People v. Witenski, 15 N.Y.2d 392, 259 N.Y.S.2d 413, 207 N.E.2d 358 (1965), it was decided that counsel should be appointed in cases of indigents charged with misdemeanors. There, the defendants had been tried by a Justice of the peace court for the theft of half a bushel of apples worth "approximately $2.00." They were fined $25.00 and sentenced to 30 days in jail. In People v. Letterio, 16 N.Y. 2d 307, 266 N.Y.S.2d 368, 213 N.E.2d 670 (1965), the same court decided that the state or municipality was not required to appoint counsel to indigents charged with mere traffic violations. *Letterio* involved two defendants: the first was sentenced to pay a fine (or, in default of payment, to serve a term of 135 days in jail) and to spend 45 days in jail; the second was ordered to pay a fine of $100.00 (in default to spend 30 days in jail) and to serve a sentence of 10 days in jail. In addition, the latter defendant's driving permit was revoked for a period of six months. Certainly the defendants in *Letterio* suffered more deprivation of property and/or liberty than those in Witenski. However, the former were not afforded counsel because they were charged with "mere" traffic violations.

Rather than lay down an inflexible rule that an indigent is entitled to counsel in all misdemeanors other than traffic violations, this court thinks it wiser to follow the lead of Mr. Justice Douglas when he said that the need for counsel is measured by the nature of the charge (which would include the possible penalty) and the ability of the average man to face it without the aid of counsel, and use this standard as a partial guide to aid the trial judge in the exercise of his discretion. This provides a much more flexible and, the court believes, a much more satisfactory solution to the problem. It recognizes that not every misdemeanor above a

traffic violation requires the appointment of counsel while admitting that some cases of traffic violations can be imagined where appointment of counsel should be considered.

■ We turn now to the case at bar wherein petitioner Creighton asserts that counsel should have been appointed to aid him in defending the misdemeanor charges brought against him. The court will note at this point that Creighton's habeas corpus petition has been handled from its inception by an experienced attorney, Mr. Anthony H. Brannon of Durham, North Carolina. It should also be remembered that North Carolina follows the rule that the appointment of counsel in misdemeanor cases is a matter within the discretion of the trial judge, and so it must be assumed that the judge in Durham County Recorders Court was not under the impression that North Carolina law absolutely forbade him to assign counsel in Creighton's case. After weighing all of the factors involved, the trial judge exercised his discretion in favor of not appointing counsel for the petitioner. This exercise of discretion was upheld in the post conviction hearing and the writ of certiorari filed by attorney Brannon to review this decision was denied by the Supreme Court of North Carolina.

In his petition under section 2254, counsel for the petitioner has alleged no facts which would show an abuse of discretion on the part of the trial judge. Rather, he has proceeded on the theory that indigents are entitled to counsel in misdemeanor cases as a matter of right. This court has carefully reviewed all of the proceedings in this case and has discovered absolutely no facts or circumstances upon which it could base a finding that there was, an abuse of discretion by the trial court. In addition, the proceedings in the state

courts seem to meet all the requirements set out, in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ The procedure whereby a federal court may review the actions of a state court in habeas corpus proceedings is necessary and must be utilized where injustice is evident. However, it is to be employed advisedly and this court will not begin with the premise that state tribunals are inherently incompetent and have not lived up to their obligations with respect to those accused of crime. Rather, the opposite assumption must be indulged in and it is supported by a strong and well recognized presumption. See: Dombroski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Saier v. State Bar of Michigan, 293 F.2d 756 (6th Cir. 1961); Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 137 F.2d 871 (6th Cir. 1943), cert. denied, 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944); United Steelworkers of America v. Bagwell, 239 F.Supp. 626 (N.D.N.C. 1965); Craft v. Settle, 205 F.Supp. 775 (W.D.Mo.1962). Therefore, this court will not upset the exercise of discretion by the North Carolina trial judge on facts such as are presented in the instant situation. It appears obvious from the record as a whole that the petitioner was not denied due process of law by the state court proceedings and, therefore, no hearing will be afforded him on this matter.

Therefore, it is hereby adjudged and ordered that the petition for habeas corpus pursuant to 28 U.S.C. § 2254 (1959) be, and the same is hereby denied.

A certified copy of this opinion and judgment is directed to be sent to petitioner and to each of the respondents.