*No. A–77*
FLORIA RODRIGUEZ, PLAINTIFF-APPELLANT, v. WILLIAM
    ROSENBLATT, *ET AL.*, DEFENDANTS-RESPONDENTS.

*No. A–90*
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
    JAMES CONLEY, DEFENDANT-APPELLANT.

Argued February 22, 1971—Decided May 10, 1971.

282

Mr. *Leonard H. Wallach,* Assistant Director, Camden Regional Legal Services, Inc., argued the cause for appellant Gloria Rodriguez (*Mr. David H. Dugan, III,* Director, Camden Regional Legal Services, Inc., attorney; *Mr. Joseph V. Ippolito* and *Mr. Allen S. Zeller,* Camden Regional Legal Services on the brief).

Mr. *Isaiah Steinberg,* City Attorney for City of Camden, argued the cause for the respondents William Rosenblatt and Theodore Davis.

Mr. *Michael S. Bokar,* Senior Attorney, Legal Aid Society of Mercer County, argued the cause for appellant James Conley.

Mr. *Andrew J. Smithson,* Assistant Prosecutor, argued cause for respondent State of New Jersey (*Mr. Bruce M. Schragger,* Mercer County Prosecutor, attorney).

Mr. *Barry H. Evenchick,* Chief, Appellate Section, Division of Criminal Justice, argued the cause for the Attorney General of New Jersey *amicus curiae* (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. John A. Brogan,* Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

JACOBS, J. The question presented in these appeals is whether indigent defendants charged in municipal court proceedings with disorderly person offenses are entitled to have counsel assigned to them. *R.* 3:27–2; *In re Garofone,* 42 *N. J.* 244, 246 (1964). The lower courts held that they were not and we certified the ensuing appeals while they were awaiting argument in the Appellate Division. *R.* 2:12–2.

Gloria Rodriguez was charged in the Municipal Court of Camden with a simple assault and battery in violation of *N. J. S. A.* 2A:170–26. That statute declares that any person who commits an assault and battery is a disorderly person. The offense is legislatively declared to be a petty one punishable by imprisonment for not more than six months or by a fine of not more than five hundred dollars, or both. *N. J. S. A.* 2A:169–4. Mrs. Rodriguez asked for but was denied assigned counsel. She then filed a complaint in the Superior Court seeking to restrain the prosecution of the municipal court proceeding until she was afforded the assistance of counsel without cost. Her complaint was verified and alleged indigency. The Senior Judge of the Municipal Court of Camden stated that his policy is not to assign counsel on assault and battery charges. He indicated that approximately three hundred disorderly person complaints are heard and disposed of per month in the Camden Municipal Court; that approximately five per cent of the defendants are represented by counsel; that less than one percent of the defendants are sentenced to imprisonment; and that although his policy is to assign counsel in some situations he does not consider that any defendant charged with a disorderly person offense is entitled under the Constitution or the court rules (*R.* 3:27) to assigned counsel as of right. The Superior Court Judge agreed with this and dismissed Mrs. Rodriguez' complaint. She duly filed her notice of appeal to the Appellate Division.

James Conley was charged in the Municipal Court of Trenton (1) with the use of a narcotic drug in violation of *N. J. S. A.* 2A:170–8 and (2) with possession of narcotic paraphernalia in violation of *N. J. S. A.* 2A:170–77.5. Each is a disorderly person offense punishable by imprisonment for not more than six months or by a fine of not more than five hundred dollars, or both. *N. J. S. A.* 2A:169–4. Mr. Conley was indigent and did not have counsel. Without any tender or assistance of counsel, a guilty plea was entered to the first charge and, after a trial at which he was unrepre-

sented, he was found guilty of the second charge. He was sentenced to two consecutive three-month terms in the Mercer County Workhouse. On his appeal to the Mercer County Court it affirmed but modified the sentence to two three-month concurrent terms. He then duly filed his notice of appeal to the Appellate Division.

New Jersey has since very early times given strong recognition to the criminal defendant's right to counsel. See *State v. Rush,* 46 *N. J.* 399, 403–404 (1966); *State v. Horton,* 34 *N. J.* 518, 522–24 (1961); *State v. Ballard,* 15 *N. J. Super.* 417, 420 (*App. Div.* 1951), *aff'd,* 9 *N. J.* 402 (1952). Thus our first constitution directed that "all criminals shall be admitted to the same privileges of witnesses and counsel, as their prosecutors are or shall be entitled to" (*N. J. Const.,* art XVI (1776)) and our later constitutions directed that in all criminal prosecutions the accused shall have the right to "the assistance of counsel in his defense" (*N. J. Const.,* art. I, para. 8 (1844); *N. J. Const.,* art. I, para. 10 (1947)). Our State was perhaps the first to direct by legislation that where an indictment has been returned against a defendant who is indigent he shall be entitled to assigned counsel without cost. See Act of Mar. 6, 1795 (*Paterson, Laws* 162 (1800)); *State v. Horton, supra,* 34 *N. J.* at 522–523.

Our present court rules contain explicit provision that "every person charged with an indictable offense shall be advised by the court of his right to retain counsel and to have the Office of Public Defender represent him if he is indigent." *R.* 3:27–1; *N. J. S. A.* 2A:158A–1 *et seq.* This governs both misdemeanors (*N. J. S. A.* 2A:85–1, 7) and high misdemeanors (*N. J. S. A.* 2A:85–6) but does not govern disorderly person or other petty offenses (*N. J. S. A.* 2A:169–4) which are subject to *R.* 3:27–2; New Jersey has never utilized the traditional English felony-misdemeanor classification. See *State v. Doyle,* 42 *N. J.* 334, 348 (1964). *R.* 3:27–2 provides that every person charged with a nonindictable offense shall be advised by the court of his right to

retain counsel or, if indigent "and constitutionally or otherwise entitled by law to counsel," of his right to have counsel assigned without cost. See also *R.* 3 :4–2; *R.* 2 :7–2; *cf. R.* 5 :3–3.

As its very language discloses, *R.* 3 :27–2 did not purport to express any opinion as to the constitutional right of a petty offender to assigned counsel without cost and in *Garofone* (42 *N. J.* 244) we expressly left the question open. Nor has the Supreme Court thus far actually passed on it. In *Winters v. Beck,* 239 *Ark.* 1151, 397 *S. W.* 2d 364 (1965), an indigent defendant was convicted in the municipal court of immorality and was sentenced to thirty days in jail plus a fine of $254. The Arkansas Supreme Court held that the municipal court had not erred in failing to assign counsel, pointing out that *Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed.* 2d 799 (1963), which recognized the indigent's constitutional right to assigned counsel, dealt not with a petty offense but with a felony and a five-year sentence. The Supreme Court denied an application for certiorari though Justice Stewart expressed the view that the Court should take the matter and decide whether *Gideon* governs cases involving so-called misdemeanants or petty offenders. *Winters v. Beck,* 385 *U. S.* 907, 87 *S. Ct.* 207, 17 *L. Ed.* 2d 137 (1966).

In *Cortinez v. Flournoy,* 385 *U. S.* 925, 87 *S. Ct.* 314, 17 *L. Ed.* 2d 222 (1966), and *De Joseph v. Connecticut,* 385 *U. S.* 982, 87 *S. Ct.* 526, 17 *L. Ed.* 2d 443 (1966), the Supreme Court again declined to review lower court holdings that *Gideon* was inapplicable to petty offenses. *Cf. Heller v. Connecticut,* 389 *U. S.* 902, 88 *S. Ct.* 213, 19 *L. Ed.* 2d 218, 679 (1967). However, it recently granted certiorari to review *State ex rel. Argersinger v. Hamlin,* 236 *So.* 2d 442 (*Fla.* 1970), where the Florida Supreme Court held that an indigent defendant charged with an offense punishable by not more than six months imprisonment was not entitled to assigned counsel. 401 *U. S.* 908, 91 *S. Ct.* 887, 27 *L. Ed.* 2d 805 (Feb. 23, 1971). It may be anticipated that when

the Supreme Court hears and decides the case next term there will be further enlightenment; in the meantime we may fairly proceed on the assumption that there is at present no controlling Supreme Court determination that all indigent petty offenders are constitutionally entitled to assigned counsel without cost. See *State v. Borst,* 278 *Minn.* 388, 154 *N. W.* 2d 888, 889 (1967); *Hendrix v. City of Seattle,* 76 *Wash.* 2d 142, 456 *P.* 2d 696, 700 (1969), *cert. denied,* 397 *U. S.* 948, 90 *S. Ct.* 969, 25 *L. Ed.* 2d 129 (1970); *State ex rel. Plutshack v. State Department of Health & Social Serv.,* 37 *Wis.* 2d 713, 155 *N. W.* 2d 549, 555, 154 *N. W.* 2d 567 (1968); *cf. City of Toledo v. Frazier,* 10 *Ohio App.* 2d 51, 226 *N. E.* 2d 777, 781–783 (1967); *Hortencio v. Fillis,* 25 *Utah* 2d 73, 475 *P.* 2d 1011, 1012 (1970); *Silverstein, Defense of the Poor in Criminal Cases in American State Courts* 123 (1965); Junker, "The Right to Counsel in Misdemeanor Cases," 43 *Wash. L. Rev.* 685 (1968); Kamisar and Choper, "The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations," 48 *Minn. L. Rev.* 1 (1963); Notes, 4 *U. Richmond L. Rev.* 306 (1970); 3 *Creighton L. Rev.* 103 (1969); 18 *Drake L. Rev.* 109 (1968).

Of course the ideal would be to have counsel available to every indigent who wants him regardless of the petty nature of the offense. Legislative broadening of the Public Defender's authority with suitable appropriation could in short order approach that goal. In the meantime we must seek a judicial doctrine which, while justly protecting the interests of the accused, avoids senseless administrative demands which could jeopardize the very structure of municipal court justice; it must be borne in mind that traffic complaints approaching three million, and other complaints including disorderly person charges approaching a quarter of a million, are being filed annually in our municipal courts. Even judges who find in the general language of the sixth amendment, and in comparable state provisions, a constitutional mandate to assign counsel without cost in petty as well as other cases, have given some recognition to the prac-

ticalities and the urgent need for flexibility. Illustrative is the opinion in *James v. Headley,* 410 *F.* 2d 325 (5 *Cir.* 1969), which is relied upon heavily by both of the appellants here. See Comment, 45 *Notre Dame Lawyer* 351 (1970).

In *Headley* two defendants were charged with a number of petty offenses, each bearing a maximum penalty of sixty days' imprisonment. Though indigent and without assigned counsel, they were found guilty and received, respectively, aggregate sentences of 600 days and 240 days. The federal court found that they had been denied their rights under the sixth amendment. Judge Wisdom expressed the view that so far as the right to counsel was concerned there was "no constitutional distinction between felonies and misdemeanors, between gross and petty offenses, between the loss of liberty for 181 days and the loss of liberty for 180 or fewer days." 410 *F.* 2d at 333. But having said that, he then proceeded to point out that "if accuseds should be provided counsel in *all* petty offense cases, the great constitutional right to counsel could be carried to absurdity; city and state systems of justice could be so overburdened as to break down"; and consequently "some pragmatic solution must be found so that even a law violator will be willing to admit that his pulling flowers in the park or his parking overtime are not important enough to require the city or state to furnish him a lawyer." 410 *F.* 2d at 334. See *Arbo v. Hegstrom,* 261 *F. Supp.* 397, 400 (*D. Conn.* 1966); *cf. Creighton v. State of North Carolina,* 257 *F. Supp.* 806 (*E. D. N. C.* 1966): "However, unfortunate as it may seem to some, we live in a society where practical considerations must be taken into account. It seems obvious that counsel must be appointed to represent an indigent on trial for his life; it seems equally obvious that it is untenable to appoint counsel for an indigent who has parked too near a fireplug. Somewhere in between these two extremes a line must be drawn * * *." 257 *F. Supp.* at 808.

In *Application of Stevenson,* 254 *Or.* 94, 458 *P.* 2d 414 (1969), the defendant was tried in the municipal court on a disorderly conduct charge. He was found guilty and sentenced to six months in jail. He had no counsel and the practice of the municipal court was not to appoint counsel for indigents charged with disorderly conduct. Though the Oregon Supreme Court considered that *Gideon* itself was not controlling so far as misdemeanants were concerned, it found independently that the failure to afford assigned counsel to indigent petty offenders as well as others was violative of both federal and state constitutions. In the course of its opinion it expressed the thought that its holding conformed with the recommendations of the President's Commission on Law Enforcement and Administration of Justice, *The Challenge of Crime in a Free Society* (1967) and with the standards relating to *Providing Defense Services* in the American Bar Association's Project on Minimum Standards for Criminal Justice (1967). But as we read those recommendations and standards they embody a measure of flexibility. The President's Commission recommended that the objective to be met as quickly as possible is to provide counsel to every indigent defendant "who faces a significant penalty" and the Bar Association standards contemplated that counsel should be provided in all criminal proceedings for offenses punishable by loss of liberty "except those types of offenses for which such punishment is not likely to be imposed." See *State ex rel. Plutshack v. State Department of Health & Social Serv., supra,* 155 *N. W.* 2d at 554; *State v. Borst, supra,* 154 *N. W.* 2d at 895.

In *People v. Witenski,* 15 *N. Y.* 2d 392, 259 *N. Y. S.* 2d 413, 207 *N. E.* 2d 358 (1965), indigent defendants were charged with stealing apples valued about $2 and were brought before a Justice of the Peace. They had no counsel and were not notified that they could have counsel appointed for them without cost. They pleaded guilty and were sentenced to 30 days in jail plus a fine. On appeal, the County Court affirmed the convictions but reduced the sentences

to the time already served. On further appeal, the Court of Appeals set aside the convictions on the ground that the defendants' constitutional right to counsel had not been observed; three members of the court dissented, noting particularly that in rural areas the Justices of the Peace "would be hard put to find and assign lawyers" in the many petty cases that come before them. 259 *N. Y. S.* 2d at 418, 207 *N. E.* 2d at 362. Eight months later the Court of Appeals held in *People v. Letterio,* 16 *N. Y.* 2d 307, 266 *N. Y. S.* 2d 368, 213 *N. E.* 2d 670 (1965), that indigent defendants charged with traffic violations were not entitled to assigned counsel. The majority in *Letterio* stressed that traffic violations had been declared by the legislature not to be crimes (*N. Y. Vehicle and Traffic Law* § 155 (*McKinney* 1970)) and that "the practical result of assigning counsel to defendants in traffic cases would be chaotic" (266 *N. Y. S.* 2d at 371, 213 *N. E.* 2d at 672) ; the two dissenters pointed out that they would limit notification as to the availability of assigned counsel to those cases "where there is a possibility of substantial punishment." 266 *N. Y. S.* 2d at 374, 213 N. E. 2d at 674.

Some state court decisions have found no constitutional compulsion nor any judicial policy for the assignment of counsel to indigent defendants charged with petty offenses. See *Hendrix v. City of Seattle, supra,* 456 *P.* 2d at 703–711; *State ex rel. Argersinger v. Hamlin, supra,* 236 *So.* 2d at 444; *Winters v. Beck, supra,* 397 *S. W.* 2d at 364; *cf. Hortencio v. Fillis, supra,* 475 *P.* 2d at 1012; *City of Toledo v. Frazier, supra,* 226 *N. E.* 2d at 783. In *Hendrix* the defendant was charged with two disorderly conduct offenses and was brought before the Seattle Municipal Court. He was indigent and his request for assigned counsel was denied. He was tried, found guilty and was sentenced to serve 180 days in jail on each charge. On appeal, he contended that he had been denied his constitutional right to counsel but this contention was rejected by the Washington Supreme Court. Judge Hale pointed out that although the federal

and state constitutions guaranteed the right to counsel they did not at any point deal in terms with the extent of governmental obligation to furnish counsel without cost. 456 *P.* 2d at 703–704. He recognized that *Gideon* was a controlling judicial determination that free counsel must be assigned in felony cases but he found no controlling determination affecting petty offenses; so far as such offenses were concerned, he thought that provision for the assignment of counsel without cost should be left exclusively to the legislature. 456 *P.* 2d at 704–705.

In defining petty offenses, Judge Hale was content to rest with the congressional expression in 18 *U. S. C.* §§ 1, 3006A. There Congress directed that in every criminal case in which the defendant is charged with a felony or a misdemeanor, "other than a petty offense," he shall be advised of his right to counsel and that if he is indigent counsel will be assigned to him without cost; petty offense is described as a misdemeanor "the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500." It is to be noted that the "Rules of Procedure for the Trial of Minor Offenses Before Magistrates," recently promulgated by the Supreme Court, expressly provide that magistrates shall notify defendants charged with petty offenses of their right to counsel and to trial in the district court but do not provide for any notification with respect to the assignment of counsel without cost. 39 *U. S. L. W.* 3330 (Feb. 2, 1971). And it is also to be noted that although the considerations may be differentiated (*James v. Headley, supra,* 410 *F.* 2d at 331–333; *State v. Borst, supra,* 154 *N. W.* 2d at 894), the Supreme Court has recognized that the constitutional guarantee of jury trial "in all criminal prosecutions" is inapplicable to petty offenses which have generally been considered to be those punishable by no more than six months imprisonment. See *District of Columbia v. Clawans,* 300 *U. S.* 617, 57 *S. Ct.* 660, 81 *L. Ed.* 843 (1937); *Cheff v. Schnackenberg,* 384 *U. S.* 373, 86 *S. Ct.* 1523, 16 *L. Ed.* 2d 629 (1966); *Frank v. United States,* 395 *U. S.* 147, 89 *S. Ct.*

1503, 23 *L. Ed.* 2d 162 (1969); *cf. Duncan v. Louisiana,* 391 *U. S.* 145, 88 *S. Ct.* 1444, 20 *L. Ed.* 2d 491 (1968); *Baldwin v. New York,* 399 *U. S.* 66, 90 *S. Ct.* 1886, 26 *L. Ed.* 2d 437 (1970).

Other state court decisions, while agreeing with *Hendrix* that there is as yet no constitutional compulsion to assign counsel to petty offenders, have taken a more flexible policy approach designed to afford due protection of the interests of the accused while not jeopardizing the system. See *State ex rel. Plutshack v. State Department of Health & Social Serv., supra,* 155 *N. W.* 2d at 552–555; *Burrage v. Superior Court,* 105 *Ariz.* 53, 459 *P.* 2d 313, 315 (1969); *State v. De Joseph,* 3 *Conn. Cir.* 624, 222 *A.* 2d 752, 759, *cert. denied* 385 *U. S.* 982, 87 *S. Ct.* 526, 17 *L. Ed.* 2d 443 (1966); *State v. Hayes,* 261 *N. C.* 648, 135 *S. E.* 2d 653, 654 (1964); *cf. MacDonnel v. Commonwealth,* 353 *Mass.* 277, 230 *N. E.* 2d 821 (1967); *State v. Simmonds,* 5 *Conn. Cir.* 178, 247 *A.* 2d 502 (1968).

In *Plutshack* the Wisconsin Supreme Court considered whether an indigent misdemeanant was entitled to assigned counsel without cost. It found no constitutional mandate but concluded that, to insure the fair administration of justice, counsel should be assigned to indigents not only in cases where the statutory maximum penalty exceeds six months but also whenever "the trial court, in the exercise of its sound discretion, deems it necessary and desirable in order to attain the best interests of justice." 155 *N. W.* 2d at 555. In *Burrage* the Arizona Supreme Court concluded that counsel for indigent misdemeanants must be provided in cases where the maximum punishment exceeds six months imprisonment and may be provided in other cases where "the trial court in its discretion believes that the complexity of the case is such that the ends of justice require legal representation" (459 *P.* 2d at 315); *cf. State v. Borst, supra,* where the court in the exercise of its supervisory powers directed that counsel be provided in any case which may lead to confinement, "in other words, if the court is to impose a jail sentence, counsel

should be furnished." 154 *N. W.* 2d at 894; *cf.* also the following comments by Professors Kamisar and Choper in 48 *Minn. L. Rev., supra* at 76:

> If the right to assigned counsel is extended to "serious" misdemeanors categorically, and *in addition* a broad discretion to appoint counsel is permitted in all other misdemeanor cases, the *likelihood* of a jail sentence should certainly be a dominant consideration in the exercise of this discretion. Indeed, there is something to be said for going further — for requiring the assignment of counsel whenever *in fact* a defendant is sentenced to jail in these lesser misdemeanor cases. If this were the test, then when there was a substantial likelihood that the defendant would be deprived of his liberty if convicted, assigned counsel would be available at the outset. If the judge miscalculated and failed to proffer assigned counsel, yet sentenced an indigent to jail — and in the overwhelming majority of cases, of course, this would be after a plea of guilty — then the defendant would have the option of starting anew — with counsel.

See Junker, *supra,* 43 *Wash. L. Rev.* at 708–715; *Hall, et als., Modern Criminal Procedure* 122–23 (1969).

New Jersey has had an extensive history of statutory provisions relating to disorderly person and other petty offenses. See *State v. Maier,* 13 *N. J.* 235, 255–258 (1953). In general these have legislatively and judicially been dealt with not as crimes but as lesser offenses which do not carry the stigmata or disabilities incident to convictions of crime. See *In Re: Ruth M. Buehrer, et al.,* 50 *N. J.* 501, 517 (1967). They have historically been triable in municipal courts by summary proceedings without the indictments and jury trials guaranteed to defendants in criminal proceedings. *N. J. Const.,* art. I, paras. 8, 9 (1947); see *State v. Rodgers,* 91 *N. J. L.* 212, 214 (*E. & A.* 1917). To that extent they offend neither the New Jersey Constitution nor the United States Constitution. See *State v. Owens,* 54 *N. J.* 153 (1969), *cert. denied,* 396 *U. S.* 1021, 90 *S. Ct.* 593, 24 *L. Ed.* 2d 514 (1970).

In *State v. Zucconi,* 93 *N. J. Super.* 380 (*App. Div.*), *aff'd,* 50 *N. J.* 361 (1967), the defendant was convicted in

the municipal court of careless driving in violation of the Motor Vehicle Act. On his appeal *de novo* to the County Court his conviction was sustained and he was fined. On his further appeal to the Appellate Division he urged that his conviction should be set aside because he was not given the *Miranda* warnings before he made inculpatory statements to the police. See *Miranda v. State of Arizona*, 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966). The Appellate Division rejected his contention in an opinion which stressed the traditional differentiation in our State between crimes and petty offenses and which suggested that it would be highly impractical "to bring in the full panoply of constitutional protections" in dealing with petty offenses. 93 *N. J. Super.* at 387. *In State v. Macuk*, 57 *N. J.* 1 (1970), this Court recently noted that in "the absence of any indication to the contrary by the United States Supreme Court, the rules of *Miranda* should be held inapplicable to all motor vehicle violations." 57 *N. J.* at 15–16.

In the light of all of the foregoing, we now join the many state courts which have announced that, pending further controlling decision by the Supreme Court, there will be no inflexible constitutional compulsion to assign counsel without cost to indigents charged in the municipal courts with disorderly person or other petty offenses. Nonetheless, considerations of fairness dictate that appropriate steps be taken to protect unrepresented indigent defendants against injustices which may result from their inability to cope fairly with municipal court charges against them. Although legislative action would undoubtedly be desirable there is no reason for withholding judicial action in the interim. We have on many occasions announced policy rulings which, though not constitutionally or legislatively compelled, have served to protect the proper interests of the defendant and to advance the sound administration of justice in our courts. See *State v. De Bonis*, 58 *N. J.* 182 (1971); *State v. Horne*, 56 *N. J.* 372, 375 (1970); *State v. Kunz*, 55 *N. J.* 128, 144 (1969); *State v. Owens, supra*, 54 *N. J.* at 162; *State v.*

*Rush, supra,* 46 *N. J.* at 408–409; *State v. Wingler,* 25 *N. J.* 161, 179 (1957).

█ The importance of counsel in an accusatorial system such as ours is well recognized. If the matter has any complexities the untrained defendant is in no position to defend himself and, even where there are no complexities, his lack of legal representation may place him at a disadvantage. The practicalities may necessitate the omission of a universal rule for the assignment of counsel to all indigent defendants and such omission may be tolerable in the multitude of petty municipal court cases which do not result in actual imprisonment or in other serious consequence such as the substantial loss of driving privileges. But, as a matter of simple justice, no indigent defendent should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost.

█ Our municipal court judges have had and continue to have broad discretion to assign free counsel to indigent defendants whenever justice so requires. That discretion may be exercised liberally under general guidelines without entailing the feared inundations. When the very charge and the attendant circumstances indicate that the indigent defendant will be in need of the assistance of assigned counsel, he should of course have it. Indeed, whenever the particular nature of the charge is such that imprisonment in fact or other consequence of magnitude is actually threatened or is a likelihood on conviction, the indigent defendant should have counsel assigned to him unless he chooses to proceed *pro se* with his plea of guilty or his defense at trial. In those rare instances where there is a plea or a trial proceeds without any tender or assignment of counsel and actual imprisonment or other consequence of magnitude looms appropriate to the municipal judge despite the preindications to the contrary, the defendant should be given the option of starting anew with suitable safeguards including, where neecssary, trial before a substituted municipal judge. See

Kamisar and Choper, *supra, 48 Minn. L. Rev.* at 76; Junker, *supra, 43 Wash. L. Rev.* at 708–715; *Hall, et als., Modern Criminal Procedure, supra* at 122; *cf. R.* 5 :9–1.

In *State v. Conley* (No. A–90) the indigent defendant was permitted to plead on one charge and to go to trial on another without any tender or assignment of counsel to him. His resulting convictions entailing imprisonment were consequently improper; they are set aside and the charges against him are remanded for further proceedings in the Municipal Court of Trenton. In *Rodriguez v. Rosenblatt* (No. A–77) the Superior Court's refusal to grant the extraordinary restraint sought against the prosecution of the municipal court complaint was a proper exercise of its judgment and is accordingly sustained; however the request by Mrs. Rodriguez for the assignment of counsel to her in the Municipal Court of Camden is remanded to that court to be dealt with in accordance with the views expressed in this opinion.

A–77—Affirmed.

A–90—Reversed.

*For affirmance in A–77 and reversal in A–90*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*Opposed*—None.